**No. 22-55766**

_____

# UNITED STATES COURT OF APPEALS
# FOR THE
# NINTH CIRCUIT

_____

*SYLVIA FERRARA,*
Plaintiff and Appellant,
vs.
*ALEJANDRO MAYORKAS*
Defendant and Appellee.

_____

Appeal from Judgment in the United States District Court for the
Central District of California
Honorable Phillip S. Gutierrez
Case No. 2:20-cv-03421-PSG-KS

_____

## APPELLANT'S OPENING BRIEF

_____

EDWARD J. BLUM (185163)
LAW OFFICE OF EDWARD J. BLUM
3731 Wilshire Blvd., Suite 312
Los Angeles, California 90010
Phone: (213) 479-5322

Attorney for Plaintiff and Appellant Sylvia Ferrara

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………...…………... iii

I.      INTRODUCTION........................................................................... 1

II.     JURISDICTIONAL STATEMENTS............................................... 1

        A.      Subject Matter Jurisdiction of the District Court …………….……. 1

        B.      Jurisdiction of the Court of Appeals ………………………...…… 2

        C.      Timeliness of Appeal from Date of Final Order ……………….…… 2

        D.      Attorney Fees …………………………………………….…… 2

III.    STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ................. 2

        A.      Whether the District Court committed error when it determined
                that mere temporal proximity between Appellant's protected
                activity and the adverse employment actions was not sufficient
                to raise a triable issue of material fact regarding the issue
                of pretext? …………………………………………….…….. 2

        B.      Whether the District Court committed error when it failed to find
                that temporal proximity plus other evidence in the record
                established pretext? ……………………………………….…… 2

IV.     STATEMENT OF THE CASE...................................................... 3

V.      SUMMARY OF ARGUMENT..................................................... 18

VI.     LEGAL ARGUMENT................................................................ 19

        A.      Summary Judgment Standard of Review ……………………..…… 19

        B.      McDonnell Douglas Burden-Shifting Standard in Title VII
                Retaliation Claims …………………………………………..……… 22

i

C.   The District Court Correctly Held That The Evidence In This Case Demonstrated a Prima Facie Case of Retaliation and Anticipatory Retaliation So As To Meet the First Prong of The McDonnell Douglas Analysis …………………………………..………….. 23

D.   Summary Judgment Should Be Reversed Because Mere Temporal Proximity Between Protected Activity and Adverse Employment Actions is Sufficient to Show Pretext ………………………..……… 25

E.   Assuming Arguendo That Mere Temporal Proximity Between Protected Activity and Adverse Employment Actions Is Not Itself Sufficient to Show Pretext, Appellant Submits That There Is Other Evidence in the Record That Summary Judgment Should Be Reversed ……………………………………… 34

VII.   CONCLUSION.................................................................................. 45

CORPORATE DISCLOSURE STATEMENT ……………………………… 47

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS .................................................................. 48

CERTIFICATE OF RELATED CASES ................................................ 49

CERTIFICATE OF SERVICE …………………………………………...…… 50

# TABLE OF AUTHORITIES

**Cases**          **Page**

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) …………….………….. 19

Bell v. Clackamas County,
341 F.3d 858 (9th Cir. 2003) ……………….………………… 28, 30, 32, 33, 34, 43

Block v. Solis,
436 F. App'x 777 (9th Cir., 2011) ………………….……………………….. 27, 33

Brooks v. Capistrano Unified Sch. Dist.,
1 F. Supp. 3d 1029 (C.D. Cal. 2014) ………………….....………………… 26, 32

Chuang v. Univ. of Cal. Davis, Bd. of Trs.,
225 F.3d 1115 (9th Cir. 2000) ……………………………………….….. 22

Cohen v. Fred Meyer, Inc.,
686 F.2d 793 (9th Cir., 1982) …………………………………….…………. 24

Cottrell v. Newport-Mesa Unified Sch. Dist.,
2021 U.S. Dist. LEXIS 98080, 2021 WL 3524123 (C.D. Cal. 2021) ………. 26, 32

Damon v. Fleming Supermarkets of Florida, Inc.,
196 F.3d 1354 (11th Cir. 1999) …………………………………………….. 37

Davenport v. Bd. of Tr. of State Ctr. Cmty. Coll. Dist.,
654 F. Supp. 2d 1073 (E.D. Cal. 2009) ………………………….....……… 27, 33

Dawson v. Entek Int'l,
630 F.3d 928 (9th Cir. 2011) …………………………….………… 22, 28, 32, 33, 34

Dominguez—Curry v. Nev. Transp. Dep't,
424 F.3d 1027 (9th Cir. 2005) …………………………….………………… 25

Earl v. Nielsen Media Research, Inc.,
658 F.3d 1108 (9th Cir. 2011) …………………………….……………… 37

Garcia v. Allstate Insurance Co.,
357 Fed. Appx. 773 (9th Cir., 2009) ……………………………..………………. 35

Gerdom v. Cont'l Airlines, Inc.,
692 F.2d 602 (9th Cir. 1982) ………………………………………..……………… 37

Gilbrook v. City of Westminster,
177 F.3d 839 (9th Cir. 1999) …………………………………….……………….. 43

Hart v. Massanari,
266 F.3d 1155 (9th Cir. 2001) …………………………………….…… 29, 30, 32

Hooker v. Parker Hannafin Corp.,
548 F. App'x 368 (9th Cir. Nov. 20, 2013) …………………………...…… 26, 32

Kauffman v. Sidereal Corp.,
695 F.2d 343 (9th Cir. 1982) ………………………………………...…… .. 22

Keyser v. Sacramento City Unified Sch. Dist.,
265 F.3d 741 (9th Cir. 2001) ……………………………………...…… 28, 32, 33, 34

Lam v. University of Hawaii,
40 F.3d 1551 (9th Cir. 1994) ……………………………………….……………... 21

Leslie v. Group ICA,
198 F.3d 1152 (9th Cir. 1999) …………………………………………………… 20

Lowe v. City of Monrovia,
775 F.2d 998 (9th Cir. 1985) …………………………………………………….. 22

Lowe v. City of Monrovia,
784 F.2d 1407 (9th Cir. 1986) ………………………………………...…… 22

McDonnell Douglas Corp. v. Green,
411 U.S. 792 (1973) ……………………………………………..…… 22, 26, 37

Miller v. Fairchild Indus., Inc.,
797 F.2d 727 (9th Cir. 1986) ………………………………… 28, 31, 32, 33, 34, 45

Nicholson v. Hyannis Air Serv., Inc.,
580 F.3d 1116 (9th Cir. 2009) …………………………...……………………….. 26

Oregon Nat. Desert Ass'n v. U.S. Forest Serv.,
550 F.3d 778 (9th Cir. 2008) ………………………...……………………… 28

Passantino v. Johnson & Johnson Consumer Prods., Inc.,
212 F.3d 493 (9th Cir. 2000) …………………………….……………… 29, 30

Porter v. California Dept. of Corrections,
419 F. 3d 885 (9th Cir., 2005) ………………………...……………… 35, 43

Reynaga v. Roseburg Forest Prods.,
847 F.3d 678 (9th Cir. 2017) ……………………………………………… 44, 45

Raad v. Fairbanks N. Star Borough Sch. Dist.,
323 F.3d 1185 (9th Cir. 2003) …………………………...…………….. 26

Recinto v. U.S. Dep't Veterans Affairs,
706 F.3d 1171 (9th Cir. 2013) …………………………………………… 21

Reeves v. Sanderson Plumbing Prods.,
530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d. 105 (2000) …...………………… 20

Schnidrig v. Columbia Mach., Inc.,
80 F.3d 1406 (9th Cir. 1996) ………………………………….…………… 21

Sischo-Nownejad v. Merced Cmty. Coll. Dist.,
934 F.2d 1104 (9th Cir. 1991) ………………………………….………… 21

Snead v. Metro. Prop. & Cas. Ins. Co.,
237 F.3d 1080 (9th Cir. 2001) ………………………………………...…….. 37

Stegall v. Citadel Broadcasting Co.,
350 F.3d 1061 (9th Cir. 2003) ……………………………………...……… 26, 32

Strother v. S. Cal. Permanente Med. Group,
79 F.3d 859 (9th Cir. 1996) ……………………………………...……… 30, 31

Surrell v. Cal. Water Serv. Co.,
518 F.3d 1097, 1108 (9th Cir. 2008) …………………………………...……… 23

Tex. Dep't of Cmty. Affs. v. Burdine,
450 U.S. 248 (1981) …………………………………………………… 22, 45

T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,
809 F.2d 626 (9th Cir. 1987) ………………………………………… 20, 21

Vasquez v. County of Los Angeles,
349 F.3d 634 (9th Cir. 2003) …………………………………………..… 37

Villiarimo v. Aloha Island Air, Inc.,
281 F.3d 1054 (9th Cir. 2002) ……………………………...………… 24, 28, 31, 33

Wallis v. J. R. Simplot Co.,
26 F.3d 885 (9th Cir. 1994) …………………………………..………………….. 19

Winarto v. Toshiba Am. Elecs. Components, Inc.,
274 F.3d 1276 (9th Cir. 2001) ………………………………….…… 30, 34, 43

Yartzoff v. Thomas,
809 F.2d 1371 (9th Cir. 1987) ……………………………...…… 24, 30, 31, 33

## STATUTES

28 U.S.C. § 1291……………………………………………….……………… 2

28 U.S.C. § 1331…………………………………………………...……… 1

28 U.S.C. § 1343…………………………………………………...…… 1

42 U.S.C. § 1988………………………………………………………… 2

42 U.S.C. § 2000e…………………………………………………...…… 1

42 U.S.C. § 2000e-3(a) ………………………………….…………… 23

42 U.S.C. § 2000e-5(k)…………………………………….…...…… 2

**REGULATIONS AND RULES**

49 C.F.R. Part § 1520.9 ……………………………………..………………….. 13

Fed. R. App. P. § 4(a)(1)(B)…………………………………………………… 2

## I.    INTRODUCTION[1]

This appeal involves the dismissal of three (3) claims for relief brought by Plaintiff and Appellant Sylvia Ferrara ("Appellant"), against Defendant and Appellee Alejandro Mayorkas ("Appellee").  The Honorable Phillip G. Gutierrez, District Court Judge for the United States District Court for the Central District of California ("District Court") granted summary judgment to Appellee on each of the three (3) claims. (**I-SER-002-017**).  As will be established herein, the District Court reached its conclusion only by ignoring and/or misconstruing the factual evidence and the law.

## II.   JURISDICTIONAL STATEMENTS

### A.    Subject Matter Jurisdiction of the District Court

The District Court had subject matter jurisdiction over this employment discrimination action pursuant to 28 U.S.C. §1331 (federal question), 28 U.S.C. §1343 (civil rights), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII").

---

[1] Appellate Opening Brief is supported by Appellant's Excerpts of Record ("ER"). References to ER are to preceded by the applicable volume number and followed by the applicable page number.  For example, references to the ER shall be as follows:  Excerpts of Record, Volume I, ("I-ER"), p. 1)(I-ER-1); Excerpts of Record, Volume II, ("II-ER"), p. 100)("II-ER-100"); Excerpts of Record, Volume III, ("III-ER"), pp. 516-535)(III- ER-516-535).

B. <u>Jurisdiction of the Court of Appeals</u>

The Ninth Circuit Court of Appeals has jurisdiction to hear this appeal

pursuant to 28 U.S.C. § 1291 because this is an appeal from judgment entered on

June 7, 2022, by the District Court. (**I-SER-002-017**).

C. <u>Timeliness of Appeal from Date of Final Order</u>

Appellant timely filed a notice of appeal on August 6, 2022. Fed. R. App. P.

§ 4(a)(1)(B). (**III-SER-589**).

D. <u>Attorney Fees</u>

Appellant intends to seek attorney's fees and costs for this case, including

this appeal, at an appropriate stage of the litigation, pursuant to 42 U.S.C. §§ 1988

and/or 2000e-5(k).

## III. STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

Appellant submits the following statement of the issues presented for

review:

A. Whether the District Court committed error when it determined that mere temporal proximity between Appellant's protected activity and the adverse employment actions was not sufficient to raise a triable issue of material fact regarding the issue of pretext?

B. Whether the District Court committed error when it failed to find that temporal proximity plus other evidence in the record established pretext?

## IV.   STATEMENT OF THE CASE

Appellant was employed by the Transportation Security Administration ("TSA") as a Transportation Security Manager at Los Angeles International Airport ("LAX") from 2003 to 2013. **(III-ER-507, Dkt. # 44-1, Defendant's Statement of Uncontroverted Facts, ("DSUF"), ¶ 2)**; **(II-ER-088, Plaintiff's Statement of Genuine Disputes ("PSGD"), Dkt. # 50-22, ¶ 2)**; **(II-ER-099, Plaintiff's Separate Statement of Uncontroverted Facts ("PSSUF"), Dkt. # 50-22, ¶ 1)**; **(II-ER-020, Defendant's Response to Plaintiff's Separate Statement ("DRPSS"), Dkt. # 55-2, ¶ 1)**.

On or about April 18, 2011, Appellant was issued a Letter of Reprimand. **(II-ER-100, PSSUF ¶ 9)**; **(II-ER-023; DRPSS ¶ 9)**.  In response, Appellant filed a formal complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC"). **(II-ER-100, PSSUF ¶ 10)**; **(II-ER-023; DRPSS ¶ 10)**.

In 2011, Appellant filed a formal complaint of discrimination in Agency Case No. HS-TSA-01353-2011, EEOC Case No. 480-2012-00428X, and that the proceeding was settled through a *Settlement Agreement and Release* signed by Federal Security Director Darby LaJoye ("LaJoye") on March 29, 2013. **(II-ER-100, PSSUF ¶ 10)**; **(II-ER-023; DRPSS ¶ 10)**.

LaJoye had knowledge of the settlement of EEOC Case No. 480-2012-00428X, and Deputy Federal Security Director Shannon Garcia-Hamilton

("Garcia-Hamilton") became aware of Appellant's prior EEO activity in May 2013. (**II-ER-100-101, PSSUF ¶ 11**); (**II-ER-024; DRPSS ¶ 11**).

On or about May 1, 2013, Assistant Federal Security Director for Screening Jason Pantages ("Pantages") issued Appellant a *Notice of Proposed Removal* for Appellant's alleged lack of candor and failure to properly designate employee representation. (**II-ER-101, PSSUF ¶ 13**); (**II-ER-025; DRPSS ¶ 13**).

On or about June 6, 2013, Appellant provided an oral reply to the *Notice of Proposed Removal* issued to her on or about May 1, 2013. In the oral reply, Appellant vehemently disputed the two (2) charges against her. (**II-ER-101, PSSUF ¶ 15**); (**II-ER-025; DRPSS ¶ 15**).

On June 18, 2013, Garcia-Hamilton,[2] deputy federal security director for security at LAX, sustained Appellant's removal from the TSA for the same reasons—i.e., (1) lack of candor and (2) failure to properly designate a representative. (**II-ER-101, PSSUF ¶ 15**); (**II-ER-025; DRPSS ¶ 15**); (**III-ER-499, Pantages Decl. ¶ 15**); (**III-ER-444-449, Dkt. # 45-13 (June 18, 2013 Notice of Decision on Proposed Removal)**).

Garcia-Hamilton met with Appellant on June 18 and informed her of the removal decision. (**III-ER-509, DSUF, ¶ 18**); (**II-ER-092, PSGD, ¶ 18**); (**III-ER-**

---

[2] Garcia-Hamilton is now deceased. (**II-ER-125, PSSUF ¶ 91**); (**II-ER-061; DRPSS ¶ 91**); (**III-ER-499, Pantages Decl. ¶ 16**).

**390-394, Excerpts from the Deposition of Sylvia Ferrara, Dkt. # 45-15**

**("Ferrara Depo. Excerpts"), 164:24–166:1**).  Appellant asked Garcia-Hamilton

"is there anything that I can do so I don't get fired[?]" (**III-ER-392, Ferrara**

**Depo. Excerpts, 166:3–4**).  In response, Garcia-Hamilton offered Appellant a Last

Chance/Abeyance Agreement ("LCA") as an alternative to her removal. (**III-ER-**

**509, DSUF, ¶¶ 20 & 21**); (**II-ER-092, PSGD, ¶¶ 20 & 21**); (**II-ER-102, PSSUF**

**¶ 16**); (**II-ER-026; DRPSS ¶ 16**); (**III-ER-304-306**).

The LCA is "an alternative to removal" that provides Appellant "one last

chance . . . to demonstrate that she can fulfill all the conditions of her

employment." (**III-ER-304-307, Dkt. # 45-18 ("LCA"), at 1**).  The LCA held the

effective date of Appellant's removal in abeyance for one year in exchange for

Appellant adhering to the terms of the agreement. (**III-ER-304-307, Dkt. # 45-18**

**("LCA"), at 1, ¶¶ 1–2**).  Among other terms, the LCA required Appellant to not

engage in any misconduct, including violating any provision of a TSA

management directive regarding employee responsibilities and conduct. (**III-ER-**

**304-307, Dkt. # 45-18 ("LCA"), at 1, ¶¶ 3–4**).  Paragraph 8 of the LCA states in

relevant part that "[i]f [Appellant] fails to comply with any terms or obligations

outlined in this Agreement, the TSA will end this Agreement" and reinstate

Appellant's removal notice issued on June 18, 2013, thereby terminating her

employment. (**III-ER-305, Dkt. # 45-18 ("LCA"), at 2, ¶ 8**); (**III-ER-510, DSUF,**

¶ 26); (**II-ER-093-094, PSGD, ¶ 26**).  Paragraphs 8, 9, and 11 also indicate that if the removal notice is reinstated, Appellant waives (1) "any and all appeal or grievance rights related to the actions or decision taken by the TSA that occurred prior to the signing of [the LCA]" and (2) her right to "initiate any further administrative or legal action against the TSA or its employees regarding this matter," including by filing an EEOC complaint or a civil action in state or federal court. (**III-ER-305, Dkt. # 45-18 ("LCA"), at 2, ¶¶ 8-9, 11**).

Garcia-Hamilton discussed the LCA with Appellant before Appellant signed the agreement. (**III-ER-509-510, DSUF, ¶¶ 24, 27**); (**II-ER-093-094, PSGD, ¶¶ 24, 27**).  However, Appellant testified that Garcia-Hamilton would not answer some of her questions about the agreement. (**III-ER-395, Ferrara Depo. Excerpts, 169:3–24**).  Appellant testified that some of the paragraphs of the LCA "didn't really make sense to [her]" and that she asked if they could be removed because she "just didn't feel comfortable with them in there because [she] was basically going to waive [her] rights and [she] just didn't feel comfortable with that." (**III-ER-395, Ferrara Depo. Excerpts, 169:3–18**).  Appellant also asked if she could take the agreement home to have her attorney review it before signing. (**III-ER-395, Ferrara Depo. Excerpts, 169:9–22**).  According to Appellant, Garcia-Hamilton responded that none of the paragraphs could be removed, that Appellant could not take the agreement home or to an attorney to review, and that

Appellant had to either hurry up and sign the agreement or be removed from federal service that day. (**III-ER-395, Ferrara Depo. Excerpts, 169:18–24**).

Appellee's SPOT SOP expressly forbids that complete SPOT SOPs be stored at screening checkpoint locations. (**II-ER-179**).[3]  Additionally, all persons employed by Appellee are required to follow all provisions contained in Appellee's Standard Operating Procedures (SOPs). **(II-ER-116, PSSUF ¶ 61); (II-ER-050; DRPSS ¶ 61**); (**II-ER-229, Appellant's Ex. 4, Appellee's Response to Appellant's First Set of Request for Admissions ("RFA"), Agency's Response to RFA No. 3**).

Despite the prohibition that SPOT SOPs are not be stored at the screening checkpoints, Garcia-Hamilton ordered the SPOT Standard Operating Procedures ("SPOT SOP") to be distributed to the screening checkpoints throughout Los Angeles International Airport ("LAX") on or about July 8, 2013. **(II-ER-106, PSSUF ¶ 15); (II-ER-034; DRPSS ¶ 32**); (**III-ER-567-568, SAC, ¶ 42**); (**III-ER-547, Answer, ¶ 42**);  (**II-ER-115-116, PSSUF ¶ 59**); (**II-ER-229, Appellant's Ex. 4, Def's Response to Appellant's First Set of RFAs, Agency's Response to RFA No. 1**).

On or about July 8, 2013, Security Training Instructor ("STI") Ruth Bukowski ("Bukowski") distributed the SPOT SOPs to all of the checkpoints at

---

[3] SPOT is defined as *Screening Passengers by Observation Techniques*.

LAX as directed by Garcia-Hamilton. Transportation Security Manager ("TSM") Brandi Richards ("Richards") received the SPOT SOPs for Terminal 1 & 2 from Bukowski on July 8, 2013. After receiving the SPOT SOPs for Terminal 1 & 2 from Bukowski, Richards signed the Signature of Receipt for SOP Distribution acknowledging receipt of the SPOT SOPs. TSM Alexander Cardona ("Cardona") received the SPOT SOP for Terminal 3 from Bukowski on July 8, 2013. After receiving the SPOT SOP for Terminal 3 from Bukowski, Cardona signed the Signature of Receipt for SOP Distribution acknowledging receipt of the SPOT SOP. TSM Cheri Martorana ("Martorana") received the SPOT SOP for Terminal 4 from Bukowski on July 8, 2013. After receiving the SPOT SOP for Terminal 4 from Bukowski, Martorana signed the Signature of Receipt for SOP Distribution acknowledging receipt of the SPOT SOP. TSM Kim Purvis ("Purvis") received the SPOT SOP for Terminal 5 from Bukowski on July 8, 2013. After receiving the SPOT SOP for Terminal 5 from Bukowski, Purvis signed the Signature of Receipt for SOP Distribution acknowledging receipt of the SPOT SOP. TSM Douglas Cruz ("Cruz") received the SPOT SOP for Terminal 6 from Bukowski on July 8, 2013. After receiving the SPOT SOP for Terminal 6 from Bukowski, Cruz signed the Signature of Receipt for SOP Distribution acknowledging receipt of the SPOT SOP. TSM Randy Walker ("Walker") received the SPOT SOP for Terminal 7 from Bukowski on July 8, 2013. After receiving the SPOT SOP for Terminal 7

from Bukowski, Walker signed the Signature of Receipt for SOP Distribution acknowledging receipt of the SPOT SOP. TSM Moises Hernandez ("Hernandez") received the SPOT SOP for Tom Bradley International Terminal ("TBIT") from Bukowski on July 8, 2013. After receiving the SPOT SOP for TBIT from Bukowski, Hernandez signed the Signature of Receipt for SOP Distribution acknowledging receipt of the SPOT SOP. **(II-ER-106-108, PSSUF ¶ 33)**; **(II-ER-034-037; DRPSS ¶ 33)**; **(III-ER-568-569, SAC, ¶ 43)**; **(III-ER-547, Answer, ¶ 43)**; **(II-ER-177)**. None of the aforementioned employees received any corrective, disciplinary, or adverse action for ordering the distribution of, distributing, or signing for SPOT SOPs on July 8, 2013. **(II-ER-119-124, PSSUF ¶¶ 72–88)**; **(II-ER-053-060; DRPSS ¶¶ 72–88)**.

On July 8, 2013, a Transportation Security Officer Frank Segbefia delivered a SPOT SOP to [Appellant]. **(III-ER-299-300, Exhibit 17 to Green Declaration, Pictures 1 & 2)**.

Supervisory Transportation Security Officer Dedric Scott ("Scott") retrieved the SPOT SOP from the Terminal 1 supervisors' podium on July 8, 2013, at approximately 2327 (i.e., 11:27 p.m.). **(II-ER-116, PSSUF ¶ 62)**; **(II-ER-034-050; DRPSS ¶ 62)**; **(II-ER-230, Defendant Alejandro Mayorkas's Response to [Appellant's] First Set of RFAs, Agency's Response to RFA No. 36)**. Scott possessed the SPOT SOP after [Appellant] possessed it on July 8, 2013. **(II-ER-**

**220, [Appellee] Alejandro Mayorkas's Amended Response to [Appellant's] First Set of RFAs, Agency's Response to RFA No. 34**).  No other TSA employee possessed the binder containing the SPOT SOP manual that [Appellant] received on July 8, 2013 <u>after</u> Scott retrieved it from the Terminal 1 Checkpoint podium. (**II-ER-115, PSSUF ¶ 58**); (**II-ER-048, DRPSS ¶ 58**).

On July 10, 2013, Deputy Assistant Federal Security Director Christine Pope ("Pope") reviewed a section in the [SPOT] SOP stating that complete [SPOT] SOPs shall not be stored at screening checkpoint locations, and that afterwards, Pope instructed SPOT Transportation Security Manager Charlie Chelette ("Chelette") to retrieve the [SPOT] SOPs from the screening locations. (**II-ER-108, PSSUF ¶ 34**); (**II-ER-037; DRPSS ¶ 34**); (**III-ER-570, SAC, ¶ 45**); (**III-ER-547, Answer, ¶ 45**); (**III-ER-191-192, Plaintiff's Exhibit 8**); (**III-ER-248, Agency's Second Amended Responses to Complainant's Interrogatories, Request for Admissions and Request for Production of Documents (Administrative Proceeding), Agency's Response to Request for Admission No. 22**).

On July 10, 2013, at approximately 0708 hours, Chelette started his search for SPOT SOPs in Terminal 1 and discovered that the SPOT SOP assigned to Terminal 1 was nowhere to be found.  Soon thereafter, Chelette reported to Pope that the SPOT SOP assigned to Terminal 1 was nowhere to be found. (**II-ER-108,**

**PSSUF ¶ 35); (II-ER-037-038; DRPSS ¶ 35); (III-ER-570, SAC, ¶ 46); (III-ER-547, Answer, ¶ 46); (II-ER-194, Plaintiff's Exhibit 7).**

On July 10, 2013, Chelette delivered the SPOT SOPs from Terminal 2 through Terminal 7 to Greg Vahradyan and that Chelette was informed that a SPOT SOP binder was issued to Terminal 1 on July 8, 2013 and signed for by Richards in Terminal 1. (**II-ER-108, PSSUF ¶ 36); (II-ER-038; DRPSS ¶ 36); (III-ER-570-571, SAC, ¶ 47); (III-ER-547, Answer, ¶ 47); (II-ER-194, Plaintiff's Exhibit 7).**

On July 10, 2013, at approximately 1000 hours, Chelette returned to Terminal 1 and spoke to the on-duty Supervisory Transportation Security Officers ("STSOs") to see if they could assist him in locating the SPOT SOP that was assigned to Terminal 1. (**II-ER-109, PSSUF ¶ 37); (II-ER-038; DRPSS ¶ 37); (III-ER-571, SAC, ¶ 48); (III-ER-547, Answer, ¶ 48).**

On July 10, 2013, at approximately 1030 hours, Chelette notified Pope that the SPOT SOP assigned to Terminal 1 was still missing. Chelette also informed Pope that Richards said she gave the SPOT SOPs to Segbefia to deliver to Terminal 1. (**II-ER-109, PSSUF ¶ 38); (II-ER-038-039; DRPSS ¶ 38); (III-ER-571, SAC, ¶ 49); (III-ER-547, Answer, ¶ 49).**

On July 10, 2013, at approximately 1045 hours, Pope went to the Terminal 1 Checkpoint to attempt to locate the SPOT SOP that was assigned to Terminal 1.

All possible locations in Terminal 1 were searched by Pope and others, along with the Behavioral Detection Officers ("BDOs) offices. All BDO officers and managers assigned to Terminal 1 who were on duty the night before were contacted to see if they recall seeing or checking out the SPOT SOP from the Terminal 1 checkpoint screening location. **(II-ER-109, PSSUF ¶ 39)**; **(II-ER-039; DRPSS ¶ 39)**; **(III-ER-571, SAC, ¶ 50)**; **(III-ER-548, Answer, ¶ 50)**.

On July 10, 2013, at approximately 1217 hours, Pope contacted Bondoc and reported that the SPOT SOP assigned to Terminal 1 was missing. **(II-ER-109, PSSUF ¶ 40)**; **(II-ER-039-040; DRPSS ¶ 40)**; **(III-ER-571, SAC, ¶ 51)**; **(III-ER-548, Answer, ¶ 51)**.

On July 10, 2013, sometime after 1217 hours, Bondoc called Garcia-Hamilton and told her that the SPOT SOP for Terminal 1 was missing. Bondoc also told Garcia-Hamilton that Segbefia delivered the SPOT SOP binder to Terminal 1 on July 8, 2013, and on July 10, 2013, Bondoc was unable to locate it. **(II-ER-110, PSSUF ¶ 41)**; **(II-ER-040; DRPSS ¶ 41)**; **(III-ER-571, SAC, ¶ 52)**; **(III-ER-548, Answer, ¶ 52)**.

Scott was not disciplined in any way after the SPOT SOP was discovered to be lost or stolen on July 10, 2013. **(II-ER-220-221, Exhibit 5, [Appellee's] Am. Response to [Appellant's] First Set of RFAs, Agency's Response to RFA No. 35)**.

On or about July 11, 2013, Garcia-Hamilton reinstated the removal action that was issued to [Appellant] on or about June 18, 2013. [Appellant] was effectively removed from federal service on or about July 11, 2013. (**III-ER-572, SAC, ¶ 54**); (**III-ER-548, Answer, ¶ 54**); (**II-ER-290-292, Exhibit 18 to Green Decl.**). Garcia-Hamilton removed Appellant from federal service for her alleged improper handling of sensitive information on July 8, 2013 in violation of TSA Management Directive 1100.73-5 (Employee Responsibilities and Conduct): Section 5 - Responsibilities: 5.A.(2) and 5.A.(7). You are also in violation of TSA Management Directive 2810.1 (SSI Program): Section 5 - Responsibilities: 5.A(1), 5.A.(2), 5.A.(6); and accompanying Handbook Section 5.1 - General Protection of SSI. Additionally, your actions fail to comply with 49 C.F.R Part § 1520.9. (**II-ER-291, Exhibit 18 to Green Decl., ¶¶ 2-7**).

TSA Management Directive No. 1100.73-5 (Employee Responsibilities and Conduct) applied to all Transportation Security Administration (TSA) employees from July 8, 2013 until February 14, 2022. (**II-ER-125, PSSUF ¶ 92**); (**II-ER-061; DRPSS ¶ 92**); (**II-ER-198, Appellant's Exhibit 6, [Appellee] Alejandro Mayorkas's Response to [Appellant's] Second Set of RFAs, Response to RFA No. 12**); (**III-ER-461-465, TSA Management Directive No. 1100.73-5 (Employee Responsibilities and Code of Conduct**).

13

The Handbook to TSA Management Directive No. 1100.73-5 (Employee Responsibilities and Conduct) applied to all Transportation Security Administration (TSA) employees from July 8, 2013 until February 14, 2022. (**II-ER-126, PSSUF ¶ 93**); (**II-ER-061; DRPSS ¶ 93**); (**II-ER-198, Appellant's Exhibit 6, [Appellee] Alejandro Mayorkas's Response to [Appellant's] Second Set of RFAs, Response to RFA No. 13**).

TSA Management Directive No. 2810.1 (SSI Program) applied to all Transportation Security Administration (TSA) employees from July 8, 2013 until February 14, 2022. (**II-ER-127, PSSUF ¶ 97**); (**II-ER-063; DRPSS ¶ 97**); (**II-ER-199, Appellant's Exhibit 6, [Appellee] Alejandro Mayorkas's Response to [Appellant's] Second Set of RFAs, Response to RFA No. 17**).

The Handbook to TSA Management Directive No. 2810.1 (SSI Program) applied to all Transportation Security Administration (TSA) employees from July 8, 2013 until February 14, 2022. (**II-ER-127, PSSUF ¶ 98**); (**II-ER-064; DRPSS ¶ 98**); (**II-ER-199, Appellant's Exhibit 6, [Appellee] Alejandro Mayorkas's Response to [Appellant's] Second Set of RFAs, Response to RFA No. 18**).

49 C.F.R. Part 1520 applied to all Transportation Security Administration (TSA) employees from July 8, 2013 until February 14, 2022. (**II-ER-127, PSSUF ¶ 99**); (**II-ER-064; DRPSS ¶ 99**); (**II-ER-200, Appellant's Exhibit 6, [Appellee]**

**Alejandro Mayorkas's Response to [Appellant's] Second Set of RFAs,**

**Response to RFA No. 19**).

49 C.F.R. Part 1520, § 1520.9 applied to all Transportation Security

Administration (TSA) employees from July 8, 2013 until February 14, 2022. (**II-**

**ER-128, PSSUF ¶ 100**); (**II-ER-065; DRPSS ¶ 100**); (**II-ER-200, Appellant's**

**Exhibit 6, [Appellee] Alejandro Mayorkas's Response to [Appellant's] Second**

**Set of RFAs, Response to RFA No. 20**).

[Appellant] was the only TSA employee who received a corrective action,

disciplinary action, and/or adverse action after the SPOT SOP binder were

delivered to the Terminal 1 & 2 on July 8, 2013. (**II-ER-114, PSSUF ¶ 54**); (**II-**

**ER-046; DRPSS ¶ 54**).

No corrective, disciplinary, or adverse action was taken against Garcia-

Hamilton for ordering that complete SPOT SOPs be delivered to and stored at all

screening checkpoint locations at LAX on or about July 8, 2013. (**II-ER-110,**

**PSSUF ¶ 43**); (**II-ER-041; DRPSS ¶ 43**); (**III-ER-572, SAC, ¶ 56**); (**III-ER-548,**

**Answer, ¶ 56**).

Garcia-Hamilton received no discipline for ordering the SPOT SOPs be

delivered to the checkpoints at Terminals 1, 2, 3, 4, 5, 6, 7, and Tom Bradley

International Terminal. (**II-ER-124, PSSUF ¶ 88**); (**II-ER-059; DRPSS ¶ 88**);

No corrective, disciplinary, or adverse action was taken against De[d]ric Scott for his involvement in and/or handling of the Terminal 1 SPOT SOP on or about July 8, 2013 or thereafter. (**II-ER-111, PSSUF ¶ 45**); (**II-ER-042; DRPSS ¶ 45**). Scott was not disciplined in any way after the SPOT SOP was discovered to be lost or stolen on July 10, 2013. (**II-ER-125, PSSUF ¶ 90**); (**II-ER-060; DRPSS ¶ 90**).

Appellant exhausted her administrative remedies from approximately July 29, 2013, until approximately January 12, 2020. (**III-ER-573-576, SAC, ¶¶ 63-76**); (**III-ER-548, Answer, ¶¶ 63-76**).

On or about April 13, 2020, Appellant filed a complaint in the District Court. (**III-SER-591, Dkt. # 1**). The District Court granted Appellee's motion to dismiss the first amended complaint, finding that the LCA issued to Appellant barred her claims, but granted leave to amend. (**III-SER-592, Dkt. # 23**). Appellant filed a Second Amended Complaint ("SAC") on or about January 20, 2021. (**III-SER-592, Dkt. # 24**).

Appellee then moved to dismiss the operative second amended complaint. (**III-SER-592, Dkt. # 27**). The District Court granted in part and denied in part the motion, finding, based on the allegations in the SAC, that the LCA did not bar Appellant's claims and dismissing only the third claim for relief. (**III-SER-592-593, Dkt. # 30**). Three claims for relief remained:

- First Cause of Action: Retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). (**III-SER-576-579, SAC, ¶¶ 77–92**), (**III-SER-592, Dkt. # 24**).

- Second Cause of Action: Anticipatory or preemptive retaliation in violation of Title VII. (**III-SER-579-582, SAC ¶¶ 93–104**), (**III-SER-592, Dkt. # 24**); and

- Fourth Cause of Action: Unlawful discrimination based on race/disparate treatment in violation of Title VII. (**III-SER-583-586, SAC ¶¶ 111–123**), (**III-SER-592, Dkt. # 24**).

On or about April 1, 2023, Appellee filed a *Motion for Summary Judgment* ("MSJ") and supporting documents to dismiss Appellant's first, second, and fourth claims for relief. (**III-SER-299-541**), (**II-ER-290-297**), (**III-SER-594, Dkt. ## 44 & 45**).

On or about May 20, 2022, Appellant filed an opposition and documents supporting his opposition. (**II-ER-087-289**), (**III-SER-594, Dkt. # 50**).

On or about May 27, 2022, Appellee filed a reply and supporting documentation to Appellant's opposition. (**II-SER-019-086**), (**III-SER-595, Dkt. # 55**).

After full briefing and no oral argument, the District Court granted Appellee's MSJ on or about June 7, 2022, entering judgment in favor of Appellee and against Appellant on all three (3) claims for relief. (**I-SER-002-017**).[4]

---

[4] Although the District Court dismissed Appellant's three (3) remaining claims in the operative SAC, Appellant only appeals the dismissal of his first and second claims for relief.

Appellant filed this appeal on or about August 6, 2022. (**III-SER-589**).

## V.    SUMMARY OF ARGUMENT

This case began with both disparate treatment discrimination and retaliation claims for relief.  However, as mentioned above, Appellant abandons her fourth claim for relief (disparate treatment based on Appellant's race and color).  Thus, this appeal only challenges the District Court's order as it relates to the retaliation claims (i.e., first claim for relief for retaliation and second claim for relief for anticipatory retaliation.

The District Court correctly held that Appellant established a prima facie case of retaliation and anticipatory retaliation.  Although Appellant did not contest Appellee's production of non-retaliatory reasons for its adverse employment actions, the District Court's ruling in regard to pretext is flawed because this case is rife with circumstantial evidence of pretext which should have defeated summary judgment and should have caused this case to have gone to the jury for a decision on the facts.  For example, Appellant has provided substantial evidence that indicates that temporal proximity alone is sufficient to establish pretext.  Even assuming arguendo that temporal proximity alone is not sufficient to establish pretext (and it is), there was other specific and substantial circumstantial evidence (plus temporal proximity) in the record to establish pretext.

## VI.   LEGAL ARGUMENT

### A.    SUMMARY JUDGMENT STANDARD OF REVIEW

A grant of summary judgment is reviewed, "*de novo* to determine whether there are any genuine issues of material fact and whether the District Court correctly applied the relevant substantive law." ***Wallis v. J. R. Simplot Co.***, 26 F.3d 885, 888 (9th Cir. 1994).  The District Court does not "weigh the evidence or determine the truth of the matter but only determines whether there is a genuine issue for trial." ***Id***. (citations omitted).

In ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986), the Supreme Court explained that "the inquiry performed [at summary judgment] is the threshold inquiry of determining whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." The Court explained, however, that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or a directed verdict.  The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." ***Liberty Lobby***, supra, 477 U.S. at 255.  The Ninth Circuit has specifically rejected the notion that a court could disregard direct evidence on the

ground that no reasonable jury would believe it. *See **T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n***, 809 F.2d 626, 631 n.3 (9th Cir. 1987). Direct testimony of the non-movant must be believed, however implausible. ***Leslie v. Group ICA***, 198 F.3d 1152, 1159 (9th Cir. 1999).

In discrimination cases, the U.S. Supreme Court reinforced the narrow role of the trial court in ruling on summary judgment motions in ***Reeves v. Sanderson Plumbing Prods.***, 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Although ***Reeves*** involved a review of a motion for judgment as a matter of law, the Court unanimously reaffirmed that, "the standard for granting summary judgment mirrors the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" ***Reeves***, supra, 530 U.S. at 150-51.

The Supreme Court emphasized that it is exclusively the role of the jury to determine credibility, weigh the evidence, and draw legitimate inferences from the facts; a court, in reviewing a summary judgment motion, must, "disregard all evidence favorable to the moving party that the jury is not required to believe." ***Reeves***, 530 U.S. at 150-51. This holding illustrates the force behind the established rule that the nonmovant is entitled to all reasonable inferences in her favor:

> "[A]t summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party: if direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the

evidence set forth by the nonmoving party with respect to that fact. Put another way, if a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied. Inferences must also be drawn in the light most favorable to the nonmoving party. Inferences may be drawn from underlying facts that are not in dispute, such as background or contextual facts and from underlying facts on which there is conflicting direct evidence but which the judge must assume may be resolved at trial in favor of the nonmoving affair."

**_T. W. Elec. Serv._**, supra, 809 F.2d at 630-31 (internal quotes and citations omitted).

In addition, the Ninth Circuit requires "very little evidence to survive summary judgment in a discrimination case, because the ultimate question is one that can only be resolved through a 'searching inquiry' – one that is most appropriately conducted by the factfinder, upon a full record.'" **_Lam v. University of Hawaii_**, 40 F.3d 1551, 1563 (9th Cir. 1994) (quoting **_Sischo-Nownejad v. Merced Cmty. Coll. Dist._**, 934 F.2d 1104, 1111 (9th Cir. 1991) _superceded by statute on other grounds, as recognized by_ **_Recinto v. U.S. Dep't Veterans Affairs_**, 706 F.3d 1171 (9th Cir. 2013)); **_Schnidrig v. Columbia Mach., Inc._**, 80 F.3d 1406, 1410-11 (9th Cir. 1996)).

As questions of motive and intent are normally inappropriate for summary disposition, if "'[a] plaintiff has established a _prima facie_ inference of disparate treatment through direct or circumstantial evidence of discriminatory intent, he will necessarily have raised a genuine issue of material fact'" with respect to the legitimacy of the defendant's articulated reason for its actions. **_Sischo-Nownejad_**,

supra, 934 F.2d at 1111 (quoting ***Lowe v. City of Monrovia***, 775 F.2d 998, 1009

(9th Cir. 1985), *as amended*, 784 F.2d 1407 (9th Cir. 1986)).

### B. MCDONNELL DOUGLAS BURDEN-SHIFTING STANDARD IN TITLE VII RETALITION CLAIMS.

The Ninth Circuit employs the burden-shifting test set out in ***McDonnell***

***Douglas Corp. v. Green***, 411 U.S. 792 (1973) to analyze retaliation and

discrimination claims under Title VII. ***Dawson v. Entek Int'l***, 630 F.3d 928, 936

(9th Cir. 2011); ***Kauffman v. Sidereal Corp.***, 695 F.2d 343, 344–45 (9th Cir. 1982);

***Chuang v. Univ. of Cal. Davis, Bd. of Trs.***, 225 F.3d 1115, 1123 (9th Cir. 2000).

Under this framework, a plaintiff has the initial burden to establish a prima facie

case of retaliation or discrimination. ***Kauffman***, 695 F.2d at 345; ***Chuang***, 225

F.3d at 1123. Next, the burden shifts to the defendant to offer a "legitimate,

nondiscriminatory reason for the challenged action." ***Chuang***, 225 F.3d at 1123–

24. If the rebuttal succeeds, the burden shifts back to the plaintiff to show the

defendant's rationale was pretextual "either directly by persuading the court that a

discriminatory reason more likely motivated the employer or indirectly by showing

that the employer's proffered explanation is unworthy of credence." ***Id***. at

1124 (quoting ***Tex. Dep't of Cmty. Affs. v. Burdine***, 450 U.S. 248, 256 (1981)).

C. **THE DISTRICT COURT CORRECTLY HELD THAT THE EVIDENCE IN THIS CASE DEMONSTRATED A PRIMA FACIE CASE OF RETALIATION AND ANTICIPATORY RETALIATION SO AS TO MEET THE FIRST PRONG OF THE MCDONNELL DOUGLAS ANALYSIS.**

It is a violation of Title VII for an employer to discriminate against an employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation under Title VII, a plaintiff must show (1) that he or she engaged in a protected activity, (2) that he or she was then subject to an adverse employment action, and (3) a causal connection between the activity and employment action. ***Surrell v. Cal. Water Serv. Co.***, 518 F.3d 1097, 1108 (9th Cir. 2008).

In the District Court, Appellee did not challenge the first and second elements of Appellant's prima facie of retaliation/anticipatory retaliation claims but argued that Appellant could not establish a causal link between her protected activity and the asserted adverse employment actions.[5] (**III-SER-536, Mot. 12:12–26**).

---

[5] [Appellant]'s retaliation claim is premised on four (4) adverse employment actions: (1) [Appellant]'s effective removal from the TSA on June 18, 2013; (2) [Appellee]'s issuance of the LCA to [Appellant] on the same day; (3) Appellee's refusal to remove paragraphs 8, 9, and 11 from the LCA; and (4) the reinstatement of [Appellant]'s removal on July 11, 2013, resulting in her termination. (**III-SER-573, SAC ¶ 61**), (**III-SER-577, SAC ¶ 82**).

23

In her opposition to Appellee's MSJ, Appellant argued that she satisfied all of the prima facie elements for retaliation/anticipatory retaliation, including the element of causation. (**II-SER-283-284, Opp. 18:5–19:6**). Specifically, Plaintiff countered that the causal connection can be inferred from the temporal proximity between the settlement of her EEOC case on March 29, 2013 and the adverse employment actions from June 18 to July 11, 2013. (**II-SER-283-284, Opp. 18:5–19:6**).

Defendant replied that the appropriate date for measuring the temporal proximity is Plaintiff's 2011 filing of the EEOC complaint and that, even if measured by the March 2013 settlement, the temporal proximity is insufficient to raise an inference of causation. (**II-SER-080, Reply 7:6–18**). Defendant also argued that such a proximity cannot establish causation because Pantages was not aware of Plaintiff's protected activity when he proposed her removal and Garcia-Hamilton was not involved in the settlement of Plaintiff's EEOC case. (**II-SER-081, Reply 8:4–10**).

Despite Appellee's arguments regarding causality, the District Court correctly held as follows:

> "A jury could reasonably infer, based on the roughly three-month interval between the settlement of Plaintiff's EEOC case on March 29, 2013 and the adverse employment actions between June 18 and July 11, 2013, that Plaintiff's protected activity "was the likely reason for" the adverse employment actions. See Cohen, 686 F.2d at 796; Villiarimo, 281 F.3d at 1064–65; see also Yartzoff, 809 F.2d at 1376

(causation could be inferred when adverse employment actions began less than three months after protected activity).

Thus, the Court finds the temporal proximity between the settlement of Plaintiff's EEOC case and the adverse employment actions sufficient to survive summary judgment as to the disputed causation element of Plaintiff's prima facie case of retaliation. Similarly, the proximity between the settlement of Plaintiff's EEOC case and Garcia-Hamilton's offering of the LCA to Plaintiff on June 18 is sufficient to raise an inference of causation for Plaintiff's anticipatory retaliation claim based on the LCA."

(**I-SER-011, ¶¶ 1 & 2**).

Appellant emphatically agrees with the District Court that she satisfied the prima facie elements of her retaliation claims.

### D. SUMMARY JUDGMENT SHOULD BE REVERSED BECAUSE MERE TEMPORAL PROXIMITY BETWEEN PROTECTED ACTIVITY AND ADVERSE EMPLOYMENT ACTIONS IS SUFFICIENT TO SHOW PRETEXT.[6]

The Ninth Circuit has described the burden regarding pretext at summary judgment as follows: To survive summary judgment at the pretext stage, a plaintiff "must produce sufficient evidence to raise a genuine issue of material fact as to whether the employer's proffered nondiscriminatory reason is merely a pretext for discrimination." ***Dominguez—Curry v. Nev. Transp. Dep't***, 424 F.3d 1027, 1037

---

[6] Appellant submits that she does not contest Appellee's articulation of nonretaliatory reasons for the adverse employment actions. (**III-SER-537, Mot. 13:23–27**), (**III-SER-497-499, ¶¶ 4–13, 15**), (**III-SER-467-490, 444-449, Dkts. # 45-3–45-8, 45-13**).

(9th Cir. 2005). "The plaintiff can prove pretext (1) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." ***Raad v. Fairbanks N. Star Borough Sch. Dist.***, 323 F.3d 1185, 1194 (9th Cir. 2003) (internal quotation marks and citation omitted). "All of the evidence — whether direct or indirect — is to be considered cumulatively." ***Id***. The amount of evidence required to avoid summary judgment is "minimal." ***Nicholson v. Hyannis Air Serv., Inc.***, 580 F.3d 1116, 1127 (9th Cir. 2009). "We have held that very little evidence is necessary to raise a genuine issue of fact regarding an employer's motive; any indication of discriminatory motive may suffice to raise a question that can only be resolved by a fact-finder." ***Id***. (citation omitted).

Regarding the pretext portion of the burden-shifting test set out in *McDonnell Douglas*, the District Court found as follows:

> ". . . Plaintiff relies on the temporal proximity between the settlement of her EEOC case on March 29, 2013 and the "series of adverse employment actions" that culminated in the reinstatement of her removal on July 11, 2013. *Opp.* 21:18–23. Although this may suffice to raise an inference of causation for purposes of a plaintiff's prima facie case, "mere temporal proximity is generally insufficient to show pretext." *Brooks v. Capistrano Unified Sch. Dist.*, 1 F. Supp. 3d 1029, 1038 (C.D. Cal. 2014) (citing *Hooker v. Parker Hannafin Corp.*, 548 F. App'x 368, 370 (9th Cir. Nov. 20, 2013)); *accord Cottrell v. Newport-Mesa Unified Sch. Dist.*, No. 8:19-cv-02304-JLS-JDE, 2021 WL 3524123, at *5 (C.D. Cal. May 18, 2021); *see also Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1070 (9th Cir. 2003)

("[T]iming, standing *alone*, may be insufficient to raise a genuine issue with respect to pretext.").

Here, the Court finds the roughly three-month interval between the settlement of Plaintiff's EEOC case and the four adverse employment actions insufficient, without any evidence of retaliatory intent, to raise a genuine dispute as to pretext, particularly given the evidence supporting the reasons for Plaintiff's June 18, 2013 removal and Plaintiff's own admission that she violated TSA policies by failing to properly secure the binder containing SSI on July 8, 2013. *See Block v. Solis*, 436 F. App'x 777, 779 (9ᵗʰ Cir. June 7, 2011) (finding temporal proximity between plaintiff's complaints and her termination "insufficient to show pretext"); *Davenport v. Bd. of Tr. of State Ctr. Cmty. Coll. Dist.*, 654 F. Supp. 2d 1073, 1102 (E.D. Cal. 2009) ("[T]iming alone, accompanied by evidence of Plaintiff's behavior problems, coupled with a complete lack of evidence of retaliatory intent, is neither specific nor substantial circumstantial evidence [of pretext].").

In sum, Plaintiff has not provided the "specific and substantial" evidence of pretext needed to overcome the legitimate, nonretaliatory reasons for the adverse actions set forth by Defendant . . ." (Citation omitted.)

(**1-ER-015, ¶¶ 2-4**).

The District Court's findings above are wrong for at least the following six (6) reasons.

<u>First</u>, the District Court erroneously found that temporal proximity <u>alone</u> cannot establish pretext. (**I-ER-015, ¶¶ 2 & 3**). Such a position by the District Court is clearly contrary to published Ninth Circuit cases and finds no support in those controlling authorities. Indeed, published Ninth Circuit decisions confirm that temporal proximity <u>itself</u> can demonstrate pretext. For example, the Ninth Circuit has previously recognized that "proximity in time between the protected

action and the allegedly retaliatory employment decision [i]s one [way] a jury logically could infer [that the plaintiff] was terminated in retaliation." *See **Keyser v. Sacramento City Unified Sch. Dist.**,* 265 F.3d 741, 751-52 (9th Cir. 2001) (internal quotation marks omitted).

Ninth Circuit precedent also clearly and unambiguously provides that "[i]n some cases, temporal proximity can <u>by itself</u> constitute sufficient circumstantial evidence of retaliation for purposes of both the prima facie case and the showing of pretext." (Emphasis added.) ***Dawson v. Entek Int'l***, 630 F.3d 928, 937 (9th Cir. 2011), citing ***Bell v. Clackamas County***, 341 F.3d 858, 865-66 (9th Cir. 2003) (finding sufficient evidence to support retaliation claim where low performance reviews immediately followed plaintiff's complaints), and ***Miller v. Fairchild Indus., Inc.***, 797 F.2d 727, 731-32 (9th Cir. 1986).[7]

Based on stare decisis, federal district courts "are bound by earlier published decisions" of the Supreme Court and the circuit court of appeals in which their district sits. See ***Oregon Nat. Desert Ass'n v. U.S. Forest Serv.***, 550 F.3d 778, 782 (9th Cir. 2008). Federal judges "may not respectfully (or disrespectfully) disagree" with their colleagues on their "own court of appeals who have ruled on a controlling legal issue, or with Supreme Court Justices writing for a majority of the

---

[7] Also see ***Villiarimo v. Aloha Island Air, Inc.***, 281 F.3d 1054, 1065 (9th Cir. 2002) ("[C]ausation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity.")

Court." ***Hart v. Massanari***, 266 F.3d 1155, 1170 (9ᵗʰ Cir. 2001). "Binding authority must be followed unless and until overruled by a body competent to do so." ***Id***. Judges in this district must follow both Supreme Court and Ninth Circuit precedent.

Again, the District Court erred when it ruled that temporal proximity <u>alone</u> cannot establish pretext because it flies in the face of the 9ᵗʰ Circuit authority cited above. Despite Appellee's evidence of legitimate, non-retaliatory reasons for its actions, Appellant should have been allowed to submit her retaliation claims to a jury because of the temporal proximity between her protected activity of settling her prior EEO case on or about March 29, 2013 and her termination, Appellee's refusal to remove paragraphs 8, 9, and 11 from the LCA, and issuance of the LCA approximately eighty-one (81) days later on June 18, 2013.[8]

<u>Second</u>, the Ninth Circuit has clearly and unambiguously held that "evidence based on timing can be sufficient to let the issue go to the jury, even in the face of alternative reasons proffered by the defendant." See ***Passantino v. Johnson & Johnson Consumer Prods., Inc.***, 212 F.3d 493, 507 (9ᵗʰ Cir. 2000). Again, ***Passantino***, is "[b]inding authority [that] must be followed unless and until overruled by a body competent to do so." ***Hart***, supra, 266 F.3d at 1170. Based on

---

[8] There is also temporal proximity between her protected activity of settling her prior EEO case on or about March 29, 2013 and the reinstatement of her removal action approximately one hundred & four (104) days later on July 11, 2013.

**_Passantino_**, evidence based on timing can be sufficient to let the pretext issue go to the jury.

Third, Appellant submits that the temporal proximity between Appellant's protected activity (i.e., settlement of EEO case on March 29, 2013, and the multiple adverse actions she suffered (i.e., adverse actions) created a reasonable inference that Appellee's motives were retaliatory. See **_Yartzoff v. Thomas_**, 809 F.2d 1371, 1377 (9th Cir. 1987) ("[W]e believe that the fact that Yartzoff experienced not one, but a series of adverse employment decisions during a two-year period is itself probative of pretext and thus of the 'elusive factual question' of intentional discrimination [.] "); **_Strother v. S. Cal. Permanente Med. Group_**, 79 F.3d 859, 870-871 (9th Cir. 1996) (holding that the temporal proximity between the plaintiff's complaints and several adverse actions supported a reasonable inference of the defendant's retaliatory motive); **_Winarto v. Toshiba Am. Elecs. Components, Inc._**, 274 F.3d 1276, 1287 n.10 (9th Cir. 2001) (same).

Fourth, the Ninth Circuit has clearly held that in some cases, temporal proximity can by itself constitute sufficient circumstantial evidence of retaliation for purposes of both the prima facie case and the showing of pretext. *See* **_Bell_**, supra, 341 F.3d at 865-66 ("Temporal proximity between protected activity and an adverse employment action can by itself constitute sufficient circumstantial evidence of retaliation in some cases."); **_Strother_**, supra,

79 F.3d at 870 ("The same evidence can be used to establish a *prima facie case* and to create a genuine issue regarding whether the employer's explanations are pretextual.")(emphasis in original); ***Miller***, supra, 797 F.2d at 731-32. The Ninth Circuit has explained that "in some cases, causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." ***Villiarimo***, 281 F.3d at 1065 (recognizing that temporal proximity of approximately three months is within the range accepted by courts as implying unlawful causation but finding nearly 18-month interval too long); *see also* ***Yartzoff***, supra, 809 F.2d at 1376 ("Causation . . . may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision.").

Therefore, based on the precedents cited above, when the District Court found that there was temporal proximity for the purpose of causation, then the District Court should have similarly found that temporal proximity was also applicable to the issue of pretext.

Fifth, the District Court's decision cites to two (2) unpublished Ninth Circuit cases and several non-binding district court cases for authority. However, these cases cited by the District Court are problematic and/or readily distinguishable from the case at hand in significant ways. For example, the ***Brooks*** case is a

district court case that cites to the <u>unpublished</u> case of ***Hooker v. Parker Hannafin Corp.***, 548 F. App'x 368, 370 (9ᵗʰ Cir. Nov. 20, 2013). Moreover, ***Hooker*** applied California law (i.e., California's Fair Employment and Housing Act ("FEHA"), not federal law (i.e., Title VII). Neither ***Brooks*** nor ***Hooker*** supersedes any of the law expressed by the Ninth Circuit in ***Keyser***, ***Miller***, ***Bell***, and ***Dawson***.

Next, the ***Cottrell*** case is distinguishable for several reasons. First, ***Cottrell*** is only a district court case that does not provide any controlling law. Second, this district court case also does not supersede any of the controlling law expressed by the Ninth Circuit in ***Keyser***, ***Miller***, ***Bell***, and ***Dawson***.

Next, to the extent that the ***Stegall*** case conflicts with ***Miller*** and ***Bell***, it is improper.[9] As stated above, the panel in ***Stegall*** "may not respectfully (or disrespectfully) disagree" with their colleagues on their "own court of appeals who have ruled on a controlling legal issue . . ." ***Hart***, supra, 266 F.3d at 1170. Both ***Miller*** and ***Bell*** established that temporal proximity can <u>by itself</u> constitute sufficient circumstantial evidence of retaliation for purposes of both the prima facie case and the showing of pretext. The concept established in ***Miller*** and ***Bell*** was again reaffirmed by ***Dawson***, supra, 630 F.3d at 937 ("*In some cases*, temporal proximity can by itself constitute sufficient circumstantial evidence of retaliation

---

[9] ***Stegall***, supra, 350 F.3d at 1070 ("[T]iming, standing *alone*, may be insufficient to raise a genuine issue with respect to pretext.").

for purposes of both the prima facie case and the showing of pretext.") (emphasis added), citing to **_Bell_** and **_Miller_**.[10]

The District Court next cites to the <u>unpublished</u> case of **_Block v. Solis_**, 436 F. App'x 777, 779 (9th Cir. June 7, 2011) (finding temporal proximity between plaintiff's complaints and her termination "insufficient to show pretext"). This case is also distinguishable because it does not contain any controlling law.

The District Court next cites to **_Davenport v. Bd. of Tr. of State Ctr. Cmty. Coll. Dist._**, 654 F. Supp. 2d 1073 (E.D. Cal. 2009). However, this case has no persuasive value because it is only a district court case that does not provide any controlling law. This case also does not supersede any of the law expressed by the Ninth Circuit in **_Keyser_**, **_Miller_**, **_Bell_**, and **_Dawson_**.

---

[10] It is apparent that what we must take from **_Miller_**, **_Bell_**, and **_Dawson_** is that the applicable protected activity must be close in time to the adverse employment action. In other words, the "in some cases" phrase appears to mean that temporal proximity alone is enough to establish pretext in cases where the timing of the adverse employment action is very close in time to the protected activity. For example, although the Ninth Circuit has refused to infer causation from timing alone where the gap between plaintiff's protected activity and the adverse employment action extended to 18 months, **_Villiarimo_**, supra, 281 F.3d at 1065, the Ninth Circuit has found timing highly probative even when the period between the employee's complaints and adverse action far exceeded the time interval in the **_Stegall_** case (acknowledging that a proximity of nine days in itself may not be sufficient evidence of pretext). *See, e.g.*, **_Yartzoff_**, supra, 809 F.2d at 1376.

The District Court erred by utilizing any and/or all of the cases mentioned above in support of its decision to dismiss Appellant's first and second causes of action.

Therefore, for all the reasons expressed above, Appellant respectfully requests that this Honorable Court uphold the principle established in ***Keyser***, ***Miller***, ***Bell***, and ***Dawson***, that "[i]n some cases, temporal proximity can <u>by itself</u> constitute sufficient circumstantial evidence of retaliation for purposes of both the prima facie case and the showing of pretext." (Emphasis added.) Appellant also requests that this Honorable Court declare that Appellant has satisfied the pretext prong of the McDonnell Douglas standard by temporal proximity alone.

**E. <u>ASSUMING ARGUENDO THAT MERE TEMPORAL PROXIMITY BETWEEN PROTECTED ACTIVITY AND ADVERSE EMPLOYMENT ACTIONS IS NOT ITSELF SUFFICIENT TO SHOW PRETEXT (AND IT IS), APPELLANT SUBMITS THAT THERE IS OTHER EVIDENCE OF PRETEXT IN THE RECORD THAT SUMMARY JUDGMENT SHOULD BE REVERSED</u>.**

Although Appellant primarily relies on "mere temporal proximity" as argued above, she offers other evidence to support the inference of retaliatory motive. ***Bell***, 341 F.3d at 866; *see also* ***Winarto***, supra, 274 F.3d at 1287 n.10 ("The evidence of timing of the events in this case and the evidence of Taylor's hostility toward Winarto could support a jury's reasonable inference that Taylor had a retaliatory motive.").

The record presents "specific and substantial" triable issues of fact as to whether Appellee's proffered rationale for firing Appellant is "unworthy of credence." Appellant submits that Ninth Circuit law provides that pretext may be established in a myriad of ways. In this case, Appellant asserts that in addition to temporal proximity, pretext can be established in at least the following four (4) ways: (1) Appellee's deviation from its established personnel procedures, (2) Appellee's more favorable treatment of comparable employees who violated its established personnel procedures, (3) Garcia-Hamilton's hostility and ill-will towards Appellant, and (4) the adverse employment actions taken by Appellee after she settled her EEO case on or about March 29, 2013.

First, the law in the Ninth Circuit is well established that an employer's deviation from its established personnel procedures is evidence of discrimination. When an employer fails to follow its own rules, procedures, or customs in making a significant personnel decision, such failure may be evidence of pretext or improper motive. ***Porter v. California Dept. of Corrections***, 419 F. 3d 885, 896 (9th Cir., 2005); ***Garcia v. Allstate Insurance Co.***, 357 Fed. Appx. 773, 775 (9th Cir., 2009).

This case provides that Garcia-Hamilton deviated from Appellee's established personnel procedures to Appellant's detriment. Appellee's SPOT SOP expressly forbids that complete SPOT SOPs be stored at screening checkpoint

locations. (**II-ER-179**). Appellee's policy also provides that all persons employed by Appellee are required to follow all provisions contained in Appellee's Standard Operating Procedures (SOPs). (**II-ER-116, PSSUF ¶ 61); (II-ER-050; DRPSS ¶ 61**); (**II-ER-229, Appellant's Ex. 4, Appellee's Response to Appellant's First Set of Request for Admissions ("RFA"), Agency's Response to RFA No. 3**).

Despite the above mandatory Appellee policies, Garcia-Hamilton ordered the SPOT SOPs to be distributed to the screening checkpoints throughout LAX on or about July 8, 2013. (**II-ER-106, PSSUF ¶ 32); (II-ER-034; DRPSS ¶ 32); (III-ER-567-568, SAC, ¶ 42); (III-ER-547, Answer, ¶ 42); (II-ER-115-116, PSSUF ¶ 59); (II-ER-229, Appellant's Ex. 4, Def's Response to Appellant's First Set of RFAs, Agency's Response to RFA No. 1**). This action by Garcia-Hamilton was a clear violation of Appellee's policies.[11] Appellant submits that "but for" Garcia-Hamilton's deviation from Appellee's SOP policy, Appellant would not have been in the position to have to secure a SPOT SOP that should have never been delivered to her in the first place. The District Court should have viewed this evidence in a light most favorable to Appellant and found a pretext and/or improper motive by Garcia-Hamilton.

---

[11] Appellant submits that had Garcia-Hamilton not violated Appellee's policies, Appellant would not have been removed from federal service for failure to safeguard a SPOT SOP.

Second, favorable treatment of comparable employees is also strong

evidence of retaliation.   It is well established that pretext may be proven through

"comparative evidence" – evidence that the employer treated similarly situated

persons in similar circumstances more favorably than it treated plaintiff.

***McDonnell Douglas***, supra, 411 US at 804 ("Especially relevant to [a showing of

pretext] would be evidence that white employees involved in acts against [the

employer] of comparable seriousness . . . were nevertheless retained or rehired.");

***Earl v. Nielsen Media Research, Inc.***, 658 F.3d 1108, 1113 (9th Cir. 2011);

***Vasquez v. County of Los Angeles***, 349 F.3d 634, 641 (9th Cir. 2003), citing ***Snead***

***v. Metro. Prop. & Cas. Ins. Co.***, 237 F.3d 1080, 1094 (9th Cir. 2001) and ***Gerdom***

***v. Cont'l Airlines, Inc.***, 692 F.2d 602, 609 (9th Cir. 1982)(en banc).  Where the

employer claims it fired [Appellant] for violation of work rules, [Appellant] may

prove pretext by submitting evidence that either (1) he did not violate the cited

work rule, or (2) if he did violate the rule, other employees outside the protected

class, who engaged in similar acts, were not similarly treated. ***Damon v. Fleming***

***Supermarkets of Florida, Inc.***, 196 F.3d 1354, 1363 (11th Cir. 1999).

This case is rife with evidence that Appellee treated similarly situated

employees more favorable than Appellant.  Again, it must be noted that Appellee's

SPOT SOP expressly forbids that complete SPOT SOPs be stored at screening

checkpoint locations. (**II-ER-179**).  Additionally, all persons employed by

Appellee are required to follow all provisions contained in Appellee's Standard Operating Procedures (SOPs). (**II-ER-116, PSSUF ¶ 61); (II-ER-050; DRPSS ¶ 61**); (**II-ER-229, Appellant's Ex. 4, Appellee's Response to Appellant's First Set of Request for Admissions ("RFA"), Agency's Response to RFA No. 3**).

Despite the above mandatory Appellee policies, Garcia-Hamilton ordered the SPOT SOPs to be distributed to the screening checkpoints throughout LAX on or about July 8, 2013. (**II-ER-106, PSSUF ¶ 32); (II-ER-034; DRPSS ¶ 32); (III-ER-567-568, SAC, ¶ 42); (III-ER-547, Answer, ¶ 42); (II-ER-115-116, PSSUF ¶ 59); (II-ER-229, Appellant's Ex. 4, Def's Response to Appellant's First Set of RFAs, Agency's Response to RFA No. 1**).  This action by Garcia-Hamilton was a clear violation of Appellee's policies.[12]

On or about July 8, 2013, Security Training Instructor ("STI") Ruth Bukowski ("Bukowski") distributed the SPOT SOPs to all the checkpoints at LAX as directed by Garcia-Hamilton.[13]  Transportation Security Manager ("TSM") Brandi Richards ("Richards") received the SPOT SOPs for Terminal 1 & 2 from Bukowski on July 8, 2013.  After receiving the SPOT SOPs for Terminal 1 & 2 from Bukowski, Richards signed the Signature of Receipt for SOP Distribution

---

[12] Garcia-Hamilton's self-described race was white. (**II-ER-119, PSSUF ¶ 71); (II-ER-053, DRPSS ¶ 71**).

[13] Again, this was a violation of Appellee's policies.

acknowledging receipt of the SPOT SOPs.  TSM Alexander Cardona ("Cardona")

received the SPOT SOP for Terminal 3 from Bukowski on July 8, 2013.  After

receiving the SPOT SOP for Terminal 3 from Bukowski, Cardona signed the

Signature of Receipt for SOP Distribution acknowledging receipt of the SPOT

SOP.  TSM Cheri Martorana ("Martorana") received the SPOT SOP for Terminal

4 from Bukowski on July 8, 2013.  After receiving the SPOT SOP for Terminal 4

from Bukowski, Martorana signed the Signature of Receipt for SOP Distribution

acknowledging receipt of the SPOT SOP.  TSM Kim Purvis ("Purvis") received

the SPOT SOP for Terminal 5 from Bukowski on July 8, 2013.  After receiving the

SPOT SOP for Terminal 5 from Bukowski, Purvis signed the Signature of Receipt

for SOP Distribution acknowledging receipt of the SPOT SOP.  TSM Douglas

Cruz ("Cruz") received the SPOT SOP for Terminal 6 from Bukowski on July 8,

2013.  After receiving the SPOT SOP for Terminal 6 from Bukowski, Cruz signed

the Signature of Receipt for SOP Distribution acknowledging receipt of the SPOT

SOP.  TSM Randy Walker ("Walker") received the SPOT SOP for Terminal 7

from Bukowski on July 8, 2013.  After receiving the SPOT SOP for Terminal 7

from Bukowski, Walker signed the Signature of Receipt for SOP Distribution

acknowledging receipt of the SPOT SOP.  TSM Moises Hernandez ("Hernandez")

received the SPOT SOP for Tom Bradley International Terminal ("TBIT") from

Bukowski on July 8, 2013.  After receiving the SPOT SOP for TBIT from

Bukowski, Hernandez signed the Signature of Receipt for SOP Distribution acknowledging receipt of the SPOT SOP. **(II-ER-106-108, PSSUF ¶ 33)**; **(II-ER-034-037; DRPSS ¶ 33)**; **(III-ER-568-569, SAC, ¶ 43)**; **(III-ER-547, Answer, ¶ 43)**; **(II-ER-177)**.

The distribution of the SPOT SOPs to all the aforesaid terminals at LAX by Bukowski violated Appellee's policies. **(II-ER-179)**; **(II-ER-116, PSSUF ¶ 61); (II-ER-050; DRPSS ¶ 61)**; **(II-ER-229, Appellant's Ex. 4, Appellee's Response to Appellant's First Set of Request for Admissions ("RFA"), Agency's Response to RFA No. 3)**.  However, Bukowski did not receive any corrective, disciplinary, or adverse action for ordering the distribution of, distributing, or signing for SPOT SOPs on July 8, 2013. **(II-ER-111, 122-124, PSSUF ¶¶ 46, 80-87)**; **(II-ER-042, 056-059, DRPSS ¶¶ 46, 80-87)**.[14]

The storage of the SPOT SOPs in the terminals by Richards, Cardona, Martorana, Purvis, Cruz, Walker, Hernandez, also violated Appellee's policies. **(II-ER-179)**; **(II-ER-116, PSSUF ¶ 61); (II-ER-050; DRPSS ¶ 61)**; **(II-ER-229, Appellant's Ex. 4, Appellee's Response to Appellant's First Set of Request for Admissions ("RFA"), Agency's Response to RFA No. 3)**.  However, neither Richards, Cardona, Martorana, Purvis, Cruz, Walker, nor Hernandez received any

---

[14] Bukowski's self-described race is white. **(II-ER-119, PSSUF ¶ 70)**; **(II-ER-053, DRPSS ¶ 70)**.

corrective, disciplinary, or adverse action for ordering the distribution of, distributing, or signing for SPOT SOPs on July 8, 2013. (**II-ER-119-121, PSSUF ¶¶ 72–79**); (**II-ER-053-056, DRPSS ¶¶ 72–79**).[15]

On July 8, 2013, a Transportation Security Officer Frank Segbefia delivered a SPOT SOP to Plaintiff. (**III-ER-299-300, Exhibit 17 to Green Declaration, Pictures 1 & 2**).

Supervisory Transportation Security Officer ("STSO") Dedric Scott ("Scott") retrieved the SPOT SOP from the Terminal 1 supervisors' podium on July 8, 2013, at approximately 2327 (i.e., 11:27 p.m.). (**II-ER-116, PSSUF ¶ 62**); (**II-ER-050, DRPSS ¶ 62**); (**II-ER-230, Defendant Alejandro Mayorkas's Response to [Appellant's] First Set of RFAs, Agency's Response to RFA No. 36**). Scott possessed the SPOT SOP after [Appellant] possessed it on July 8, 2013. (**II-ER-220, [Appellee] Alejandro Mayorkas's Amended Response to [Appellant's] First Set of RFAs, Agency's Response to RFA No. 34**). No other

---

[15] Richards' self-described race is white. (**II-ER-117, PSSUF ¶ 63**)(**II-ER-050, DRPSS ¶ 63**); Cardona's self-described race is Hispanic/Latino. (**II-ER-117, PSSUF ¶ 64**)(**II-ER-051, DRPSS ¶ 64**); Martorana's self-described race is white. (**II-ER-117, PSSUF ¶ 65**); (**II-ER-051, DRPSS ¶ 65**); Purvis' self-described race is African-American/black. (**II-ER-117, PSSUF ¶ 66**); (**II-ER-051, DRPSS ¶ 66**); Cruz's self-described race is Hispanic/Latino. (**II-ER-118, PSSUF ¶ 67**); (**II-ER-052, DRPSS ¶ 67**); Walker's self-described race is African-American/black. (**II-ER-118, PSSUF ¶ 68**); (**II-ER-052, DRPSS ¶ 68**); and Hernandez's self-described race is Hispanic/Latino. (**II-ER-118, PSSUF ¶ 69**); (**II-ER-052, DRPSS ¶ 69**).

TSA employee possessed the binder containing the SPOT SOP manual that [Appellant] received on July 8, 2013 after Scott retrieved it from the Terminal 1 Checkpoint podium. (**II-ER-115, PSSUF ¶ 58**); (**II-ER-048, DRPSS ¶ 58**). Scott was not disciplined in any way after the SPOT SOP was later discovered to be lost or stolen on July 10, 2013. (**II-ER-220-221, Exhibit 5, [Appellee's] Am. Response to [Appellant's] First Set of RFAs, Agency's Response to RFA No. 35**).

As mentioned above, Appellant has provided compelling evidence that Garcia-Hamilton removed Appellant from federal service for failure to safeguard SSI materials but she did not direct nor take any administrative action against herself, Bukowski, Richards, Cardona, Martorana, Purvis, Cruz, Walker, Hernandez, and Scott even though they all engaged conduct that infringed or did not safeguard Appellee's SPOT SOP. (**II-ER-211-221, [Appellee] Alejandro Mayorkas's Amended Response to [Appellant]'s First Set of RFAs, Agency's Response to RFAs Nos. 12-28, 35**).[16]

The fact of the matter is that [Appellant] was the only employee employed by Appellee who received a corrective action, disciplinary action, and/or adverse

---

[16] At a minimum, all the aforementioned people should have been in violation of the same policies that Appellant was removed from federal service for, if not more. (**II-ER-291, Exhibit 18 to Green Decl., ¶¶ 2-7**).

action relating to the SPOT SOP from July 8, 2013 to July 10, 2013. (**II-ER-114, PSSUF ¶ 54**); (**II-ER-046; DRPSS ¶ 54**).[17]

Viewing this evidence in the light most favorable to Appellant, Appellant submits that this Honorable Court should find that the District Court ignored specific and substantial evidence that Appellee treated Garcia-Hamilton, Bukowski, Richards, Cardona, Martorana, Purvis, Cruz, Walker, Hernandez, and Scott more favorable than Appellant and such a finding undermine the credibility of Appellee's proffered reasons for terminating Appellant's employment.

Third, Garcia-Hamilton's statements to Appellant during the LCA meeting demonstrated hostility and ill-will towards the Appellant. ***Gilbrook v. City of Westminster***, 177 F.3d 839, 857 (9th Cir. 1999); ***Bell***, supra, 341 F.3d at 866 (mean looks); ***Winarto***, supra, 274 F.3d at 1286, 1287 n.10 ("exasperation," "lack of sympathy" as circumstantial evidence) ("The evidence of timing of the events in this case and the evidence of Taylor's hostility toward Winarto could support a jury's reasonable inference that Taylor had a retaliatory motive."); ***Porter***, supra. 419 F.3d at 895-896 ("not for you" sneers; spitting in food; glaring).

/////

/////

---

[17] Plaintiff identifies as female and Hispanic (Spanish). (**II-ER-106-108, PSSUF ¶ 7**), (**II-ER-034-037, DRPSS ¶ 7**).

Garcia-Hamilton's hostility and ill-will towards Appellant occurred during the LCA meeting on June 18, 2013. Examples of Garcia-Hamilton's hostility and ill-will towards Appellant include, but are not limited to, the fact that Garcia-Hamilton's tone of voice was not friendly (**III-ER-395-396, Def's Ex. 13 to Green Declaration, 169:25-170:1-2**); when Garcia-Hamilton told Appellant, "we don't have all day, either sign [the LCA] or you are going to be terminated from federal government [service] today." (**III-ER-398, Def's Ex. 13 to Green Declaration, 172:19-23**); and her behavior generally during the meeting, including not allowing Appellant to have legal counsel review the LCA before she signed it. (**III-ER-395, Def's Ex. 13 to Green Declaration, 169:1-24**).

Viewing this evidence in the light most favorable to Appellant, Appellant submits that this Honorable Court should find that the District Court ignored specific and substantial evidence of Garcia-Hamilton's hostility towards Appellant and such a finding undermine the credibility of Appellee's proffered reasons for terminating Appellant's employment.

Finally, the adverse employment actions taken by Appellee after she settled her EEO case on or about March 29, 2013 is highly suggestive of pretext. See ***Reynaga v. Roseburg Forest Prods.***, 847 F.3d 678, 694 (9th Cir. 2017) (holding that an employee who had been employed for five years but who was subjected to an adverse employment action one month after engaging in protected activity was

suggestive of pretext). In the *Notice of Decision on Proposed Removal*, Garcia-Hamilton stated as follows:

> "In determining the appropriateness of the penalty, I considered a number of factors. I find your satisfactory performance, lack of disciplinary history, and employment with the TSA for almost ten (10) year as mitigating. I do find, however, that your lack of disciplinary history, length of service, or satisfactory performance is [not] sufficient enough to outweigh the severity of your offense."

**(III-ER-447, Exhibit to Pantages Decl., ¶ 3)**.

Indeed, Appellant had been employed with Appellee for almost ten (10) years and had no formal discipline in her official personnel file after she settled her EEO complaint on or about March 29, 2013. Immediately after Appellant settled her EEO complaint on or about March 29, 2013, a series of adverse employment actions began to occur culminating in her removal from federal service on July 11, 2013. Like ***Reynaga*** above, a reasonable jury could conclude that Appellee's actions displayed a discriminatory and/or retaliatory animus.

## VII.  CONCLUSION

For all of the foregoing reasons, it is clear the trial court improperly granted summary judgment because triable issues of material fact exists and the Appellee is not entitled to summary judgment as a matter of law.[18]  Appellant was subject to

---

[18] Appellee's asserted reasons for Appellant's removal presents an "elusive factual question," ***Burdine***, 450 U.S. at 255 n.8, that is incapable of resolution on summary judgment, the District Court erred in dismissing Appellant's first and second claims for relief. ***Miller***, supra, 797 F.2d at 733.

retaliation and anticipatory retaliation and she requests the opportunity to try this case before a jury.  Appellant respectfully requests that this Honorable Court reverse and remand this case back to the District Court for a jury trial on the merits.

Dated:  July 17, 2023                          Signature:
                                                               By:  s/Edward J. Blum
                                                               Attorney for Plaintiff/Appellant
                                                               SYLVIA FERRARA

## CORPORATE DISCLOSURE STATEMENT

This statement is made pursuant to Federal Rule of Appellate Procedure

26.1.  Plaintiff is not a corporate entity and has no parent corporation, subsidiaries

or affiliates that have issued shares to the public.


Dated:  July 17, 2023                    Signature:

                                         By:  s/Edward J. Blum
                                         Attorney for Plaintiff/Appellant
                                         SYLVIA FERRARA

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.     This brief complies with the type-volume limitation of the Fed. R. App.P 32 (a)(7)(B) because her brief is proportionately spaced, has a typeface of 14 points or more, and contains **10,286 words**, excluding the parts of the brief exempted by Fed. R. App.P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2019 (Version 2301) using Times New Roman, font size 14

Signature:
By:  s/Edward J. Blum
Attorney for Plaintiff/Appellant
SYLVIA FERRARA

July 17, 2023

## CERTIFICATE OF RELATED CASES

The undersigned certifies that to counsel's knowledge, there are no related

cases and appeals pending.

Signature:
By: s/Edward J. Blum
Attorney for Plaintiff/Appellant
SYLVIA FERRARA

July 17, 2023

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on July 17, 2023.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

**DOCUMENTS SERVED:  APPELLANT'S OPENING BRIEF**

**ATTORNEYS SERVED:**

Paul B. Green, Esquire, Attorney
Assistant United States Attorney
Office of the U.S. Attorney
300 North Los Angeles Street, Suite 7516
Los Angeles, CA 90012
Email: paul.green@usdoj.gov

Jasmin Yang, Esquire, Attorney
Assistant United States Attorney
300 North Los Angeles Street, Suite 7516
Los Angeles, California 90012
jasmin.yang@usdoj.gov

s/ Edward J. Blum, Esq.
Law Office of Edward J. Blum
3731 Wilshire Blvd., Suite 312
Los Angeles, California 90010
Phone: (213) 479-5322
