No. 22-55766

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

**SYLVIA FERRARA**,

*Plaintiff-Appellant*,

v.

**ALEJANDRO MAYORKAS, Secretary, United States Department of Homeland Security**,

*Defendant-Appellee.*

Appeal from the United States District Court
Central District of California
No. CV 20-03421 PSG (KS)

---

## APPELLEE'S ANSWERING BRIEF

---

E. MARTIN ESTRADA
    *United States Attorney*
DAVID M. HARRIS
    *Assistant United States Attorney*
    *Chief, Civil Division*
PAUL B. GREEN
    *Assistant United States Attorney*
    Federal Building
    300 N. Los Angeles Street, Suite 7516
    Los Angeles, California 90012
    Telephone: (213) 894-0805
    E-mail: Paul.Green@usdoj.gov

Attorneys for Defendant-Appellee
Alejandro Mayorkas

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ...............................................................................1

II. COUNTER-STATEMENT OF THE ISSUES ..................................2

III. STATEMENT OF JURISDICTION .................................................2

IV. STATEMENT OF THE CASE .........................................................3

    A. Statement of Facts ..................................................................3

        1. Ferrara's Suspension for Posting Publicly Available Topless Photos of Herself on the Internet.....................................................................3

        2. Ferrara Is Removed for Demonstrating Lack of Candor in TSA's Investigation of Her Topless Photos ...............................................................5

        3. Ferrara's Last Chance Agreement.................................8

        4. Ferrara's Removal Is Reinstated After She Failed to Secure Sensitive Security Information.....................9

    B. Course of Proceedings Below ...............................................12

V. STANDARD OF REVIEW ............................................................13

VI. SUMMARY OF THE ARGUMENT...............................................13

VII. ARGUMENT...................................................................................14

    A. The Secretary Was Entitled to Judgment as a Matter of Law on Ferrara's Retaliation Claim .................................14

        1. Ferrara Waived Her Retaliation Claims Except as They Relate to Her June 18, 2013 Removal and the July 11, 2013 Reinstatement of Her Removal. .....14

i

2.    Ferrara Failed to Establish that Her Protected
      Activity Was the "But-For" Cause of Her
      Termination ................................................................. 16

3.    Ferrara Failed to Offer Specific and Substantial
      Evidence that the TSA's Legitimate Reasons for
      Her Termination Were Pretext for Retaliation .......... 21

4.    Ferrara's New Arguments Regarding
      Circumstantial Evidence Are Unpersuasive ............... 26

B.    Preemptive Retaliation Is Not an Actionable,
      Standalone Cause of Action ................................................. 29

VIII. CONCLUSION ............................................................................. 31

# TABLE OF AUTHORITIES

**PAGE**

## Cases

*AMA Multimedia, LLC v. Wanat,*
   970 F.3d 1201 (9th Cir. 2020)..............................................................26

*Babb v. Wilkie,*
   140 S. Ct. 1168 (2020)................................................................16, 21

*Bell v. Clackamas Cnty.,*
   341 F.3d 858 (9th Cir. 2003)..............................................................24

*Bradley v. Harcourt, Brace & Co.,*
   104 F.3d 267 (9th Cir. 1996)..............................................................24

*Campbell v. Hawaii Dep't of Educ.,*
   892 F.3d 1005 (9th Cir. 2018)............................................................28

*Clark Cty. Sch. Dist. v. Breeden,*
   532 U.S. 268 (2001)..........................................................18, 19, 20

*Cohen v. Fred Meyer, Inc.,*
   686 F.2d 793 (9th Cir. 1982)..............................................................19

*Dep't of Fair Employment and Hous. v. Lucent Techs., Inc.,*
   642 F.3d 728 (9th Cir. 2011)........................................................22, 29

*E. & J. Gallo Winery v. EnCana Corp.,*
   503 F.3d 1027 (9th Cir. 2007)......................................................13, 17

*Fuentes v. Perskie,*
   32 F.3d 759 (3d Cir. 1994) ................................................................22

*Godwin v. Hunt Wesson, Inc.,*
   150 F.3d 1217 (9th Cir. 1998)............................................................25

*In re Am. W. Airlines,*
217 F.3d 1161 (9th Cir. 2000)..............................................................26

*JG v. Douglas County School Dist.,*
552 F.3d 786 (9th Cir. 2008)................................................................13

*Keyser v. Sacramento City Unified Sch. Dist.,*
265 F.3d 741 (9th Cir. 2001)................................................................25

*Manatt v. Bank of Am., NA,*
339 F.3d 792 (9th Cir. 2003)................................................................19

*McDougald v. Quad/Graphics, Inc.,*
2017 WL 6333772 (E.D. Va. Dec. 11, 2017), aff'd 744 F. App'x 839
(4th Cir. 2018) ......................................................................................16

*Miller v. Fairchild Indus., Inc.,*
797 F.2d 727 (9th Cir. 1986)................................................................24

*Moran v. Selig,*
447 F.3d 748 (9th Cir. 2006)................................................................28

*Padgett v. Wright,*
587 F.3d 983 (9th Cir. 2009)................................................................31

*Posey v. Dept. of Defense,*
180 F. App'x 931 (Fed. Cir. 2006)........................................................16

*Pottenger v. Potlatch Corp.,*
329 F.3d 740 (9th Cir. 2003)................................................................22

*Reed v. Avis Budget Grp., Inc.,*
472 F. App'x 525 (9th Cir. 2012) .........................................................19

*Reeves v. Sanderson Plumbing Prods., Inc.,*
120 S. Ct. 2097 (2000)..........................................................................25

*St. Mary's Honor Ctr. v. Hicks,*
   509 U.S. 502 (1993) .............................................................. 22

*Strother v. S. Cal. Permanente Med. Grp.,*
   79 F.3d 859 (9th Cir. 1996) ................................................... 24

*Texas Dep't of Cmty. Affs. v. Burdine,*
   450 U.S. 248 (1981) .............................................................. 22

*U.S. Postal Serv. Bd. of Governors v. Aikens,*
   460 U.S. 711 (1983) .............................................................. 25

*Univ. of Tex. Sw. Med. Ctr. v. Nassar,*
   133 S. Ct. 2517 (2013) ..................................................... 16, 21

*Ventress v. Japan Airlines,*
   747 F.3d 716 (9th Cir. 2014) ................................................. 27

*Villiarimo v. Aloha Island Air, Inc.,*
   281 F.3d 1054 (9th Cir. 2002) ........................................ passim

*W. Radio Servs. Co. v. Qwest Corp.,*
   678 F.3d 970 (9th Cir. 2012) ................................................. 27

*Weil v. Citizens Telecom Servs. Co.,*
   922 F.3d 993 (9th Cir. 2019) ................................................. 28

*Yeager v. Bowlin,*
   693 F.3d 1076 (9th Cir. 2012) ............................................... 15

## Statutes

28 U.S.C. § 1291 ...................................................................... 2
42 U.S.C. § 2000e-3 ................................................................ 30
42 U.S.C. § 2000e-16 ................................................................ 2
49 U.S.C. § 114(r) ............................................................ 10, 17

**Rules**

Fed. R. App. P. 4(a)(1)(B) ................................................................ passim

Fed. R. Civ. P. 30(c) ........................................................................ 15

**Regulations**

49 C.F.R. Part 1520 ................................................................... 10, 17

## I.    INTRODUCTION

Plaintiff-Appellant Sylvia Ferrara was employed by the Transportation Security Administration (TSA) as a Transportation Security Manager at the Los Angeles International Airport (LAX). In 2013, TSA management suspended Ferrara for posting topless photos of herself online and soliciting donations and gifts from her subordinates, among others. Ferrara later received a notice of removal for exhibiting a lack of candor in TSA's internal investigation of her misconduct.

Rather than remove Ferrara immediately, the agency agreed to defer Ferrara's termination by entering into a Last Chance Agreement through which Ferrara agreed to abide by TSA procedures, policies, and directives. However, when Ferrara breached that agreement by failing to secure TSA's Sensitive Security Information at an LAX terminal, TSA reinstated Ferrara's termination and removed her from service.

Ferrara subsequently filed suit, originally alleging that her termination constituted both race and gender discrimination and retaliation under Title VII.[1] The district court granted summary

---

[1] As noted below, Ferrara has abandoned her disparate treatment claims on appeal.

1

judgment in favor of the Secretary of Homeland Security after concluding that Ferrara failed to raise a triable issue as to whether the agency's proffered reasons for terminating her were actually pretext for discrimination. Ferrara timely appealed.

## II.   COUNTER-STATEMENT OF THE ISSUES

1.   Whether the Secretary was entitled to summary judgment on Ferrara's retaliation claim because Ferrara did not establish that her protected activity was the but-for cause of her termination and because Ferrara failed to raise a triable issue that TSA's reasons for her termination were pretextual.

2.   Whether "anticipatory or preemptive retaliation" is an actionable cause of action.

## III.  STATEMENT OF JURISDICTION

The statutory basis for jurisdiction in the district court is Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16. The statutory basis for jurisdiction in this Court is 28 U.S.C. § 1291.

On June 8, 2022, the district court entered its order granting the Secretary's motion for summary judgment and dismissing the action. 1-ER-2-17. Ferrara filed her Notice of Appeal on August 8, 2022. 3-ER-589. Thus, the appeal is timely. Fed. R. App. P. 4(a)(1)(B).

## IV. STATEMENT OF THE CASE

### A. Statement of Facts

Ferrara began working for the TSA around 2002. 3-ER-314. She was a Transportation Security Manager at LAX from 2003 to her termination in July 2013. 3-ER-313. In 2013, Ferrara managed anywhere from 50 to 70 employees. 3-ER-347. As an employee, Ferrara was required to comply with the agency's code of conduct, which prohibited her from engaging in any conduct which would cause embarrassment to the agency or otherwise cause either the public or TSA to question her reliability, judgment, or trustworthiness.[2] 3-ER-464.

### 1. Ferrara's Suspension for Posting Publicly Available Topless Photos of Herself on the Internet

In April 2013, TSA management suspended Ferrara for posting

---

[2] TSA policy dictates that: "While on or off-duty, employees are expected to conduct themselves in a manner that does not adversely reflect on TSA, or negatively impact its ability to discharge its mission, cause embarrassment to the agency, or cause the public and/or TSA to question the employee's reliability, judgment or trustworthiness." 3-ER-464. Moreover, managers, like Ferrara, are responsible for "[p]roviding positive leadership and serving as a role model for subordinates by complying with all employee responsibilities, and demonstrating a commitment and sense of responsibility to their job and high ethical standards." 3-ER-463.

topless photos of herself online. 3-ER-308-12. The photos were readily available to the public, including to the TSA employees Ferrara supervised. *Id.* Ferrara posted her topless photos alongside a "tips" jar for monetary donations and a "wish list" of items such as shoes, perfume, and lingerie for followers and fans to send her. 3-ER-308.

Although Ferrara admitted to posting the offending pictures on the internet, 3-ER-350-51, she disputed that TSA policy prohibited her from doing so. When asked if she believed "that posing for topless photographs and having them posted on the internet did not cause TSA to question your reliability, judgment or trustworthiness," Ferrara responded, "It shouldn't have." 3-ER-355. When further asked if she believed "that posing for topless photographs and having them posted on the internet is consistent with being a positive role model for your subordinates," Ferrara insisted, "I don't see what the problem is." 3-ER-356.

TSA management found Ferrara's conduct to be highly inappropriate because she was a security manager overseeing an LAX terminal, who in addition to posting the photos, also responded to her followers and fans while on duty. 3-ER-310-11. Further, the deciding

official found that Ferrara misused her authority as a manager to interfere with an agency investigation into the misconduct. 3-ER-310. The deciding official believed that Ferrara's misconduct violated TSA policies, adversely reflected on TSA, and caused embarrassment to the agency. 3-ER-311.

In receiving her suspension, the Acting Deputy Federal Security Director reminded Ferrara that as a manager, "it is important that both the TSA and the public have complete trust and confidence that you will perform your duties at the highest level. Your actions failed to uphold this trust." 3-ER-311. Ferrara was advised that "any further misconduct on your behalf may lead to more severe disciplinary actions, up to and including, termination of your TSA employment." 3-ER-311.

### 2. Ferrara Is Removed for Demonstrating Lack of Candor in TSA's Investigation of Her Topless Photos

On May 1, 2013, LAX Assistant Federal Security Director for Screening Jason Pantages proposed Ferrara's removal from TSA for (a) her lack of candor regarding whether any TSA employee assisted her in her response to the Notice of Proposed Suspension, and (b) her failure to

properly designate a representative for her response to the Notice of Proposed Suspension. 3-ER-497, 491-96.

Before deciding to propose her removal, Pantages thoroughly reviewed documentation about Ferrara's misconduct, including information provided by Ferrara and other TSA employees. 3-ER-498, 466-90. Based on this information, Pantages believed that Ferrara had deliberately failed to disclose that another TSA employee assisted with her response to the Notice of Proposed Suspension. 3-ER-493-94, 498. The documentation showed that when asked if she had received assistance from another TSA employee, Ferrara stated that she had not. 3-ER-488-90. Based on his review, Pantages also believed that Ferrara did not designate a representative in the matter, despite being required under TSA policy to disclose the name of the lawyer who had helped her. 3-ER-498.

Pantages found that the charged misconduct was serious and violated several TSA policies applicable to Ferrara. 3-ER-498. Pantages determined that by failing to properly disclose that a TSA employee represented Ferrara, she had deprived management of the ability to check for conflicts of interest. *Id.* He also determined that Ferrara

displayed an inability to follow instructions. *Id.* Furthermore, Pantages found that Ferrara's failure to provide truthful and accurate information in an official matter caused him to question her integrity, judgment, and truthfulness. *Id.* Indeed, Ferrara's authority as a manager depended upon a high degree of trust from supervisors, colleagues, and subordinates. *Id.* Pantages concluded that Ferrara's conduct failed to live up to that trust and seriously damaged her credibility. *Id.* Ferrara's actions also damaged Pantages's confidence in her ability to meet the high standards of professionalism, integrity, ethics, and conduct required of all TSA employees. 3-ER-499.

On June 18, 2013, LAX Deputy Federal Security Director for Security Shannon Garcia-Hamilton sustained Ferrara's removal. 3-ER-404, 444-49, 499. In making this decision, Garcia-Hamilton considered the Notice of Proposed Removal and the documents attached to it, including information provided by Ferrara and other TSA employees. *See generally* 3-ER-444-49. Garcia-Hamilton approved the Notice of Decision because she believed that Ferrara's conduct was serious, violated TSA policies, and warranted removal. *Id.* Like Pantages, Garcia-Hamilton found that Ferrara's actions damaged her confidence

in Ferrara's ability to meet the high standards of professionalism and conduct required of TSA employees. 3-ER-448.

### 3.     Ferrara's Last Chance Agreement

On June 18, 2013, Ferrara met with Garcia-Hamilton in her office where she received the Notice of Decision of Proposed Removal. 3-ER-390-92, 444-49. Ferrara then asked Garcia-Hamilton, "[I]s there anything that I can do so I don't get fired"? 3-ER-392. Soon after, Garcia-Hamilton left the office and returned with a Last Chance Agreement and offered it to Ferrara. 3-ER-392-93. Ferrara testified that "she was relieved a bit because I had another chance … to not lose [her] job." 3-ER-393. She also testified that it was "a wonderful thing" to receive a last chance agreement. 3-ER-410. Garcia-Hamilton discussed the terms of the LCA with Ferrara and answered her questions. 3-ER-395, 393.

In signing the LCA, Ferrara agreed to adhere to "good work habits that are acceptable to the TSA" and to abide by TSA procedures, policies, and directives. 3-ER-304. The LCA also provided that if Ferrara did not comply with the LCA, TSA would reinstate the June 18, 2013 Notice of Decision on Proposed Removal, thereby terminating her

employment. 3-ER-305. In return for keeping her job, Ferrara would waive the right to pursue administrative or district court litigation should her removal be reinstated. *Id.*

While Ferrara did not like some of the provisions in the LCA, she ultimately chose to sign it. 3-ER-396-97. In doing so, Ferrara attested that she "willingly and voluntarily elected to enter into" the LCA. 3-ER-304. She further attested that "her signature [] was in no way coerced by any party or by the representative of any party." 3-ER-306. She agreed that "she has read and considered each of the provisions of this Agreement and that she voluntarily enters into this Agreement with full knowledge of the consequences for her failure to comply with any and all terms and obligations of the Agreement." 3-ER-306. In addition, Ferrara signed a separate "Statement of Understanding" accompanying the LCA, stating, "I am signing this Last Chance/ Abeyance Agreement of my own free will." 3-ER-307.

### 4. Ferrara's Removal Is Reinstated After She Failed to Secure Sensitive Security Information

On July 8, 2013, less than three weeks after Ferrara signed the LCA, a Transportation Security Officer approached Ferrara at a supervisory podium at LAX with a manual of Sensitive Security

Information.[3] 2-ER-290. The manual was inside a white binder that was covered with a florescent pink cover sheet marked as "Sensitive Security Information." *Id.* Video footage captured Ferrara making eye contact and nodding her head at the officer as she accepted the binder. 2-ER-290; 3-ER-299-30. Ferrara then looked at the binder and opened it. 2-ER-290, 3-ER-301-02.



As reflected in the security footage, Ferrara then placed the binder on the podium and continued to perform other duties. 2-ER-290,

---

[3] Sensitive Security Information (SSI) is a statutorily defined and protected category of information relevant to transportation security that would be harmful if improperly disclosed. 49 U.S.C. § 114(r); 49 C.F.R. Part 1520.

3-ER-303. For nearly eight hours, from 3:46 p.m. until 11:25 p.m., the binder remained unsecured where Ferrara left it, at the supervisory podium on the public floor at LAX. 2-ER-290. Specifically, Ferrara failed to secure the binder in a locked desk or file cabinet where it would be protected from unauthorized access. *Id.* Her failure to do so violated TSA policies requiring employees to secure Sensitive Security Information. 2-ER-291.

Ferrara readily admitted that she "failed to secure the binder" and that doing so was "a violation of the TSA policies and procedures." 3-ER-429; *see also* 3-ER-421-22. She further testified that "by violating the TSA policies and procedures," she "had violated the last chance agreement that [she] had signed." 3-ER-429. She testified that Sensitive Security Information "needs to be secured," 3-ER-421, and acknowledged her misconduct in reviewing stills of TSA video footage of the incident. 3-ER-422-25, 299-303.

TSA investigated the incident. *See generally* 2-ER-290-92. On July 11, 2013, Garcia-Hamilton met with Ferrara in a pre-decisional discussion and gave her an opportunity to respond, which Ferrara did both orally and in writing. 2-ER-291. After considering Ferrara's

response, Garcia-Hamilton issued a Reinstatement of Removal. 2-ER-291. She stated that "[d]espite [Ferrara's] repeated argument that [she did] not recall the incident, and that [she was] not aware that [she was] going to receive [the binder], I note that the binder was clearly marked and labeled with a florescent pink sheet as a SOP which is [Sensitive Security Information]." 2-ER-291. Consequently, Garcia-Hamilton concluded that Ferrara had violated TSA policy and violated her LCA. 2-ER-291. Ferrara was terminated on July 11, 2013. 2-ER-290.

## B.   Course of Proceedings Below

Ferrara filed her original complaint on April 13, 2020, 3-ER-591, and her first amended complaint on September 29, 2020. 3-ER-591. On December 14, 2020, the district court granted the Secretary's motion to dismiss the first amended complaint with leave to amend. 3-ER-592; 1-SER-14-21. Ferrara filed a second amended complaint on January 20, 2021. 3-ER-556-88. On April 27, 2021, the district granted in part and denied in a part the Secretary's motion to dismiss the second amended complaint. 3-ER-592-93; 1-SER-4-12.

On June 7, 2022, the district court granted summary judgment in favor of the Secretary on Ferrara's remaining claims and entered its final judgment. 1-ER-2-17.

On August 8, 2022, Ferrara timely appealed. 3-ER-589. On appeal, Ferrara has abandoned her discrimination claim. AOB 18 ("Appellant abandons her fourth claim for relief (disparate treatment based on Appellant's race and color).") (emphasis removed).

## V. STANDARD OF REVIEW

The grant or denial of summary judgment is a conclusion of law which this Court reviews *de novo*. *JG v. Douglas County School Dist.*, 552 F.3d 786, 802 (9th Cir. 2008). This Court may affirm on any ground supported by the record, even if not relied upon by the district court. *See E. & J. Gallo Winery v. EnCana Corp.*, 503 F.3d 1027, 1049 (9th Cir. 2007).

## VI. SUMMARY OF THE ARGUMENT

The Secretary was entitled to summary judgment because Ferrara failed to establish a *prima facie* case of retaliation. In particular, Ferrara did not show that her prior protected activity alone, rather than her repeated and admitted violations of TSA policy, was the but-for cause of her termination. In addition, and as the district court correctly

recognized, Ferrara failed to create a triable issue as to whether TSA's legitimate reasons for terminating her were pretext for retaliation. Indeed, Ferrara failed to adduce specific and substantial evidence that the agency did not honestly believe that her violation of TSA policy in leaving Sensitive Security Information unprotected for nearly eight hours constituted a violation of the LCA that in turn warranted her removal from service. This Court should affirm.

## VII. ARGUMENT

### A. The Secretary Was Entitled to Judgment as a Matter of Law on Ferrara's Retaliation Claim

#### 1. Ferrara Waived Her Retaliation Claims Except as They Relate to Her June 18, 2013 Removal and the July 11, 2013 Reinstatement of Her Removal.

On appeal, Ferrara's retaliation claims are premised on four allegedly adverse employment actions: (1) Ferrara's effective removal from federal service on June 18, 2013 following TSA management's determination that she demonstrated a lack of candor in the agency's investigation of her posting of topless photos; (2) TSA's offering of the LCA as an alternative to her immediate removal; (3) Ferrara's unsuccessful attempt to change the terms of the LCA; and (4) the reinstatement of Ferrara's removal following her violation of TSA policy

14

less than three weeks after signing the LCA by failing to secure

Sensitive Security Information. AOB 23; 3-ER-573.

Despite her efforts to assert these claims on appeal, Ferrara

expressly disclaimed her retaliation claims as to the second and third

adverse actions in the district court. Specifically, Ferrara testified:

> Q.    Do you believe that Ms. Garcia-Hamilton retaliated
> against you based on your protected activities by offering you
> the last chance agreement?
>
> A.    I don't think so.
>
> Q.    And she couldn't have retaliated against you because
> the last chance agreement was giving you a chance to keep
> your job. Right?
>
> A.    Right.

3-ER-419; *see also* Fed. R. Civ. P. 30(c) ("The examination and cross-

examination of a deponent proceed as they would at trial under the

Federal Rules of Evidence[.]").

In opposition to summary judgment, Ferrara offered an unsigned,

self-serving declaration attempting to rehabilitate her deposition

testimony. 2-ER-137-138. The district court struck that declaration, and

Ferrara did not appeal that ruling. 1-ER-6; *see also Yeager v. Bowlin*,

693 F.3d 1076, 1078 (9th Cir. 2012) ("The general rule in the Ninth

Circuit is that a party cannot create an issue of fact by an affidavit

contradicting his prior deposition testimony."). Thus, the only claims

properly on appeal are Ferrara's retaliation claims as to her June 18,

2013 removal and the July 11, 2013 reinstatement of that removal

following Ferrara's violation of the LCA. 3-ER-407, 431.[4]

### 2. Ferrara Failed to Establish that Her Protected Activity Was the "But-For" Cause of Her Termination

In order to establish a *prima facie* case of retaliation, Ferrara had

to show (1) she engaged in a protected activity; (2) she suffered an

adverse employment decision; and (3) protected activity was the "but-

for" cause of differential treatment that played some role in the adverse

employment action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct.

2517, 2534 (2013); *see also Babb v. Wilkie*, 140 S. Ct. 1168, 1174 (2020)

(requiring age to be the but-for cause of differential treatment that

played some role in the challenged employment action). Because

---

[4] Even if Ferrara had not waived certain claims, offering an LCA is not an adverse employment action for purposes of retaliation because the only alternative for Ferrara was removal. *See Babb v. Wilkie*, 140 S. Ct. 1168, 1175-76 (2020) (challenged action must be "adverse"); *see also Posey v. Dept. of Defense*, 180 F. App'x 931, 934 (Fed. Cir. 2006) ("[b]y entering into the LCA, Mr. Posey waived his right to argue that the LCA itself w[as] tainted by retaliation"); *McDougald v. Quad/Graphics, Inc.*, 2017 WL 6333772, at *4 (E.D. Va. Dec. 11, 2017), *aff'd* 744 F. App'x 839 (4th Cir. 2018) (LCA "negates any inference of retaliation ….").

Ferrara failed to establish that her engagement in protected activity
was the but-for cause of her June 18, 2013 removal or the July 11, 2013
reinstatement of that removal, this Court may affirm on that basis
alone. *E. & J. Gallo Winery*, 503 F.3d at 1049 (this Court may affirm on
any ground supported by the record, even if not relied on by the district
court).

As to the June 18, 2013 removal, Ferrara offered no evidence to
rebut the deciding officials' reasonable belief that Ferrara should be
removed based on (a) her lack of candor regarding whether any TSA
employee assisted her in her response to the Notice of Proposed
Suspension, and (b) her failure to properly designate a representative
for her response to the notice of proposed suspension. *See* 2-ER-90-92;
*see also* 3-ER-349-51, 355 (testimony about topless photographs). Thus,
Ferrara cannot establish that retaliation, rather than her violations of
TSA policies, was the but-for cause of her removal.

The same is true of the July 11, 2013 reinstatement of her
removal. TSA policies require that Sensitive Security Information be
secured and protected from unauthorized access because it bears on the
agency's critical security functions. *See* 49 U.S.C. § 114(r); 49 C.F.R.

17

Part 1520; 3-ER-458. Ferrara acknowledged as much at deposition, testifying that "SSI needs to be secured." 3-ER-422. Yet, on July 8, 2013, Ferrara violated TSA policy by leaving Sensitive Security Information unsecured for nearly eight hours. 3-ER-299-303; 3-ER-422-425. After being shown video images of her behavior, Ferrara agreed that she "failed to secure the binder," which constituted a "violation of TSA policies and procedures." 3-ER-429. She also testified that "fail[ing] to secure [the] binder" "caused [her] termination." 3-ER-428-29. Because Ferrara's own testimony confirms that her violation of TSA policy "caused" her termination, she failed to establish the requisite but-for causation.

On appeal, Ferrara argues that causation "can be inferred" between her 2011 EEO case[5] and her termination based on the temporary proximity between the settlement of her 2011 EEO case and her termination in 2013. However, temporal proximity may support an inference of causation only where the protected activity and the adverse decision were "very close." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). The lengthy two-year gap between Ferrara's 2011 EEO

---

[5] *See* AOB at 3 (stating Ferrara filed her EEO case in 2011).

complaint and the alleged adverse events precludes such an inference here.[6] *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) (rejecting causation with an 18-month long lapse between the protected activity and plaintiff's termination); *Manatt v. Bank of Am., NA*, 339 F.3d 792, 802 (9th Cir. 2003) (finding nine-month gap insufficient). But even if the *settlement* of an EEO case can be deemed new protected activity for purposes of a retaliation claim—which it should not be—the more than three-month gap between Ferrara's March 29, 2013 settlement and the July 11, 2013 termination is not sufficiently "close" to support an inference of causation. *See Clark Cty.*, 532 U.S. at 273-74 (finding three-month gap insufficient).

Moreover, to support an inference of causation based on temporal proximity, Ferrara must show that the particular decision makers involved in the adverse employment action knew of her protected activity. *See Reed v. Avis Budget Grp., Inc.*, 472 F. App'x 525, 526 (9th Cir. 2012) (citing *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir.

---

[6] Although the district court agreed that two years was too attenuated to support an inference of causation, it suggested that Ferrara's continued pursuit of her EEO complaint through March 2013 could constitute protected activity for purposes of measuring temporal proximity. 1-ER-11.

1982) ("Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity.")). As the Supreme Court explained in *Clark County School District v. Breeden*, employers "need not suspend previously planned [decisions] upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." 532 U.S. at 273.

Here, the undisputed evidence establishes that Pantages was not aware of Ferrara's prior EEO activity, nor her settlement of that case, when he proposed Ferrara's removal. *See* 3-ER-499. Similarly, Garcia-Hamilton was not involved in Ferrara's EEO settlement. 2-ER-251-255. While Garcia-Hamilton did eventually become aware of Ferrara's prior EEO activity in May 2013, this alone cannot establish but-for causation in light of the undisputed evidence of Ferrara's repeated violations of TSA policy that were the basis for her termination.[7]

The district court found that the time period between Garcia-

---

[7] This is further evidenced by Ferrara's testimony, where when pressed, she had no facts to support her retaliation claim. 3-ER-413-14. (Q. "[W]hat facts do you have to show that Ms. Garcia-Hamilton retaliated against you? A. When she made the decision to fire me. Q. What about it? A. I feel that that was retaliation.").

Hamilton's learning of Ferrara's EEO settlement and Ferrara's termination is sufficiently close to the June 18, 2013 removal and the July 11, 2013 reinstatement of her removal to establish an inference of retaliation. In reaching that determination, however, the district court relied on cases that pre-date both *Nassar*, 133 S. Ct. 2517, and *Babb*, 140 S. Ct. 1168. 1-ER-11. Likewise, on appeal, Ferrara does not address the Supreme Court's instruction that a *prima facie* case of retaliation requires but-for causation. *See Babb*, 140 S. Ct. at 1174. Accordingly, even if temporal proximity creates an *inference* of retaliation, that inference is far from sufficient to establish that Ferrara's prior EEO activity *alone*, rather than her repeated violations of TSA policy, was the *but-for cause* of her termination. As such, Ferrara failed to establish a *prima facie* case of retaliation.

3. **Ferrara Failed to Offer Specific and Substantial Evidence that the TSA's Legitimate Reasons for Her Termination Were Pretext for Retaliation**

Even assuming Ferrara made a *prima facie* case of retaliation, to defeat summary judgment, she had to raise a triable issue that the TSA's proffered justification for its actions was pretext. Although Ferrara may rely on circumstantial evidence to show pretext, such

evidence "must be both specific and substantial." *Villiarimo*, 281 F.3d at 1062.

Importantly, Ferrara cannot establish pretext by showing that the employer's decision was "wrong, mistaken or unwise." *Dep't of Fair Employment and Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 746 (9th Cir. 2011). Rather, pretext requires a showing that the employer did not honestly believe its reason for its action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 516 (1993) ("[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason.") (emphasis in original); *Villiarimo*, 281 F.3d at 1063 (courts "only require that an employer honestly believed its reason for its actions."). Indeed, Title VII is not "intended to 'diminish traditional management prerogatives.'" *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 259 (1981); *Pottenger v. Potlatch Corp.*, 329 F.3d 740, 748 (9th Cir. 2003) (an employer "has leeway to make subjective business decisions, even bad ones."); *see also Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994) ("[t]o discredit the employer's proffered reason … the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at

22

issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent").

TSA articulated legitimate, non-discriminatory reasons for its actions. As to the June 18, 2013 removal, Ferrara was removed from service for (1) her lack of candor regarding whether any TSA employee assisted her in her response to the Notice of Proposed Suspension, and (2) her failure to properly designate a representative for her response to the notice of proposed suspension.

As to the July 11, 2013 reinstatement of removal, Ferrara violated her LCA when she failed to ensure that the binder of Sensitive Security Information she received was properly secured and protected from unauthorized access on July 8, 2013. Ferrara readily admitted to this misconduct, and it was recorded on video. Accordingly, the deciding official concluded that Ferrara should be terminated for violating her LCA by failing to secure the binder of Sensitive Security Information in contravention of TSA policy.

Ferrara argues that circumstantial evidence of temporal proximity alone is sufficient to establish not only a *prima facie* case, but also to establish pretext. *See* AOB 25-34. But this is directly contrary to

23

established law. *See Bradley v. Harcourt, Brace & Co.,* 104 F.3d 267,

270 (9th Cir. 1996) (affirming summary judgment for defendant where

plaintiff presented no evidence beyond that produced for the *prima facie*

case). Not one case cited by Ferrara involves a finding of pretext based

*solely* on temporal proximity. Rather, the cases she cites all rely on

temporal proximity with some additional direct or circumstantial

evidence of pretext. *See, e.g., Strother v. S. Cal. Permanente Med. Grp.*,

79 F.3d 859, 869-71 (9th Cir. 1996), *as amended on denial of reh'g* (Apr.

22 and June 3, 1996) (plaintiff established triable issues as to *prima*

*facie* case and pretext through evidence of close temporal proximity

between complaint and adverse actions, email threatening plaintiff not

to file a discrimination charge, and shifting explanations of reason for

termination); *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731-33 (9th

Cir. 1986) (plaintiffs' layoffs occurred less than two months after they

signed EEOC no fault settlement agreements waiving right to sue for

discrimination, and they were the only persons within their respective

departments laid off); *Bell v. Clackamas Cnty.*, 341 F.3d 858, 865-67

(9th Cir. 2003) (evidence of temporal proximity and of supervisor's

displeasure with plaintiff's complaints of race discrimination supported

jury determination of retaliatory termination).[8]

Ferrara has the ultimate burden of persuasion, and must offer specific and significantly probative evidence that the agency's *intentional* purpose was to discriminate or retaliate against her. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S. Ct. 2097, 2111-12 (2000) (the ultimate question in every employment discrimination case is whether the plaintiff was the victim of intentional discrimination); *U.S. Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 714-15 (1983) (the ultimate factual inquiry is whether the defendant intentionally discriminated against plaintiff). Ferrara, however, has no direct evidence, nor any specific substantive circumstantial evidence, that TSA's actions were the result of retaliation. *See Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998) (circumstantial

---

[8] The *Villiarimo* and *Keyser* cases cited by Ferrara do not support her argument as they involve plaintiffs who, like herself, were *unable* to offer specific and substantial evidence of pretext. *See Villiarimo*, 281 F.3d at 1064-65 (summary judgment in favor of employer proper where plaintiffs failed to show close temporal proximity sufficient to show causation (as to one plaintiff) or that airline's stated reasons for termination were pretextual (as to both plaintiffs)); *Keyser v. Sacramento City Unified Sch. Dist.,* 265 F.3d 741, 744-45 (9th Cir. 2001) (plaintiffs in free speech case failed to show retaliatory motive through circumstantial evidence where over two years separated the protected speech and the adverse actions).

evidence on the issue of pretext must be "specific" and "substantial" in order to create a triable issue); *Villiarimo*, 281 F.3d at 1062. Nor can Ferrara raise a triable issue that the deciding officials did not honestly believe that her conduct justified her removal. Since no reasonable juror could conclude that Ferrara's removal for a plain violation of agency policy was instead pretext for retaliation, the Secretary is entitled to judgment in his favor.

### 4. Ferrara's New Arguments Regarding Circumstantial Evidence Are Unpersuasive

Ferrara raises several new arguments about circumstantial evidence for the first time on appeal. *See* AOB 34-45. They should be rejected for that reason alone. *See AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1213-14 (9th Cir. 2020) ("Absent exceptional circumstances, we generally will not consider arguments raised for the first time on appeal ….") (quoting *In re Am. W. Airlines*, 217 F.3d 1161, 1165 (9th Cir. 2000)). Regardless, none of Ferrara's arguments point to "specific and substantial" evidence that TSA's reasons for terminating her were pretext for *intentional* discrimination.

**Distribution of the Binder.** Ferrara first argues that if the binder of Sensitive Security Information had not been distributed, she

26

would not have failed to secure the binder. AOB 36. Ferrara essentially suggests that her admitted failure to secure the binder was due solely to the agency's distribution of the information in the first place. In addition to making no logical sense, this argument is based on pure speculation and should be disregarded. *See Ventress v. Japan Airlines*, 747 F.3d 716, 723 n.8 (9th Cir. 2014) (citing *W. Radio Servs. Co. v. Qwest Corp.*, 678 F.3d 970, 979 (9th Cir. 2012) (arguments not supported by citations to the record, argument, or any legal authority are generally deemed waived).

**Comparators.** Ferrara also argues that she can establish pretext based on similarly situated employees that were treated more favorably. However, Ferrara has no evidence of any similarly situated employees who had also engaged in protective activity. Instead, Ferrara simply recycles the same arguments she previously made in support of her now-abandoned disparate treatment claim, even though alleged comparators outside of Ferrara's race/color are inapposite to her retaliation claim. *See*, *e.g.*, AOB 41 (identifying the race of alleged comparators); *see also* 2-ER-276-82 (Ferrara's arguments made to the district court regarding her abandoned discrimination claim). Moreover,

27

"[i]t is not enough for employees to be in similar employment positions; rather, the plaintiff and the comparator employee must be 'similarly situated … in all material respects." *Weil v. Citizens Telecom Servs. Co.*, 922 F.3d 993, 1004 (9th Cir. 2019) (citing *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006)); *Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005, 1015 (9th Cir. 2018). There is no evidence that any of the alleged comparators engaged in prior EEO activity, much less received a last chance agreement or failed to ensure that a binder of Sensitive Security Information was properly secured.[9]

**Garcia-Hamilton's Tone of Voice.** Ferrara also claims that she can establish pretext based on her deposition testimony about the meeting in which Garcia-Hamilton offered her the LCA. Specifically, Ferrara argues that because Garcia-Hamilton's tone of voice "wasn't friendly," that raises a triable issue of pretext. AOB 44. Even if Ferrara's characterization of her interaction with Garcia-Hamilton is

---

[9] Although Ferrara claims that no other TSA employees were disciplined for actions taken on July 8, 2013, the record evidence does not establish that any other employee failed to secure Sensitive Security Information on that date. 3-ER-299-303; 2-ER-290-92. In other words, no other employees were disciplined because they, unlike Ferrara, did not fail to secure Sensitive Security Information. 2-ER-211-19.

true, it does not raise a triable issue that the deciding officials who authorized her removal and the reinstatement of her removal following her breach of the LCA did not honestly believe that Ferrara's conduct warranted termination. *See Villiarimo*, 281 F.3d at 1063 (courts "only require that an employer honestly believed its reason for its actions.").

**Ferrara's Time with TSA.** Finally, Ferrara argues that the adverse actions themselves create an inference of pretext given the duration of her employment with TSA. AOB 44-45. Ferrara offers no legal basis for this contention. Moreover, as Ferrara acknowledges, the deciding official did consider Ferrara's ten years of service but found that it was not "sufficient enough to outweigh the severity of the offense." AOB 45. Ferrara's disagreement about how her employer exercised its judgment is not a basis to overcome summary judgment. *See Dep't of Fair Employment*, 642 F.3d at 746 (holding that plaintiff failed to established pretext because a plaintiff cannot establish pretext by showing that the employer's decision was wrong, mistaken or unwise).

### B. Preemptive Retaliation Is Not an Actionable, Standalone Cause of Action

Ferrara asserts a standalone claim for "anticipatory or preemptive

retaliation" on the theory that offering the LCA as an alternative to removal was a form of retaliation for potential future EEO activity. The district court's dismissal of this claim was correct for two reasons.

First, Ferrara's preemptive retaliation claim is duplicative of her retaliation claim based on her assertion that offering an LCA was itself retaliatory. The district court treated the preemptive retaliation claim as duplicative when it allowed it to survive a motion to dismiss. *See* 1-ER-9-10. Because the preemptive retaliation claim is duplicative, it fails for the same reasons the retaliation claim fails.

Second, Ferrara identified no binding cases recognizing a standalone cause of action for preemptive retaliation. Indeed, Ferrara's assertion that she may sue based on the *possibility* that she *might* engage in *future* EEO activity is inconsistent with this Court's Jury Instructions for Title VII retaliation, which refers only in the past tense to the allegation that a plaintiff "participated" in a protected activity or "opposed" an unlawful employment practice. Manual of Model Civil Instructions for the District Courts of the Ninth Circuit, §10.8 (2017 Ed., updated May 2020); *see also* 42 U.S.C. § 2000e-3 (it is unlawful for an employer to retaliate against an employee because "[s]he has

*opposed* any practice made an unlawful employment practice by this subchapter" or "because [s]he has *participated* in any manner in an investigation, proceeding, or hearing under this subchapter") (emphasis added). Ferrara's preemptive retaliation claim is based on speculative, future EEO activity, which is not a viable basis for retaliation.[10]

## VIII. CONCLUSION

For the foregoing reasons, the Secretary respectfully requests that this Court affirm the district court's judgment in his favor.

Dated: November 14, 2023          Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division

  */s/ Paul B. Green*
PAUL B. GREEN
Assistant United States Attorney

Attorneys for Defendant-Appellee
Alejandro Mayorkas

---

[10] Ferrara, acknowledging the lack of authority for her preemptive retaliation claim, urged the district court to create a new cause of action based on inapposite cases from other circuits involving the private sector. Should Ferrara make any such argument for the first time on reply, it should be rejected. *See Padgett v. Wright*, 587 F.3d 983, 985 n.2 (9th Cir. 2009) (per curiam) (court will ordinarily not consider matters on appeal that are not raised and argued in appellant's opening brief).

## STATEMENT OF RELATED CASES

Counsel for Appellee is not aware of any related cases pending in this Court.


Dated: November 14, 2023        Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division

*/s/ Paul B. Green*
PAUL B. GREEN
Assistant United States Attorney

Attorneys for Defendant-Appellee
Alejandro Mayorkas, Secretary,
United States Department of
Homeland Security

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 22-55766

I am the attorney or self-represented party.

**This brief contains** | 5,963 | **words**, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

( • ) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

  ( ) it is a joint brief submitted by separately represented parties;

  ( ) a party or parties are filing a single brief in response to multiple briefs; or

  ( ) a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated [          ].

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Paul B. Green      **Date** | Nov 14, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 08** | *Rev. 12/01/2018*